UNION PACIFIC RAILWAY CO. v. LLOYD NICHOLS.

PASSENGERS—*Who are not Passengers; Liability of Railway Company for injuries.* Where a railway company is transporting freight and messengers for an express company, and a person not in the employ of the express company goes into the baggage car with the regular express messenger, not as a passenger, but for the purpose of learning the route, and assists the regular express messenger along the route, and the conductor of the train not knowing the facts, but supposing such person to be an express messenger in the employ of the express company, allows him to ride without paying his fare, and the baggage car turns over and said person is injured, in an action by such person against the railway company for damages for such injuries, *held*, that the plaintiff was not a passenger, nor entitled to the rights of a passenger.

*Error from Shawnee District Court.*

NICHOLS sued the *Union Pacific Railway Co., E. D.*, for injuries sustained by the upsetting of a car in which plaintiff was riding, laying his damages at $25,000. The averments of the petition are sufficiently stated in the opinion. It appeared from the evidence that the United States Express Company, by contract with the *Railway Company*, had the use of a portion of the baggage car on a passenger train of said Railway Company, and the Express Company's traveling agents, called express messengers, were allowed to ride in such car without paying fare; that other passengers were excluded therefrom; that plaintiff by an arrangement with Warner, the express messenger, and McNaughton, a local agent of the express company at the State Line, went into this car for the purpose of learning the route so that he might take the express messenger's place in his absence; that plaintiff was introduced to the

32—8TH KAS.

conductor of the train by the express messenger as an express messenger learning the route, and he afterward acted as such, assisting the regular express messenger along the route; that the conductor allowed him to ride in the baggage car without paying any fare, supposing him to be an express messenger; that there was plenty of room in the passenger cars for him; that he was not in fact an express messenger, nor was he in the employ of the express company in any manner whatever; that the express messenger, and the express agent at the State Line had no authority to employ him; that the baggage car was turned over, and the plaintiff injured; that none of the passenger cars were turned over, nor any person in them injured. Plaintiff's injuries were shown to be very serious; his left arm was fractured; his head was struck severely, causing an injury to his brain. The case was tried at the June Term, 1869. Numerous instructions were asked by the *Railway Company*, some of which were refused, and others were modified or qualified. Many instructions were given, among them the following:

"The paying of fare is not a necessary prerequisite to the right to recover. If the defendant through its agents in charge of the cars knowingly permit a person without fraud on his part to ride either in the passenger cars proper, or in the baggage or express car, without paying fare, the defendant is liable to the same extent as if fare was paid, for the consequences of its negligence and carelessness." ⁎ ⁎ ⁎

"If you find, from the evidence, that the plaintiff Nichols acted in good faith, and under the honest belief that he had a right to go upon the train and in the express car without paying fare, on account of any arrangement he had made with an employee or messenger of the express company, and was not guilty of any fraud or deception upon the conductor or the railroad company for the purpose of evading the payment of fare, you will consider the consent of the conductor to carry him without fare as the consent of the company, and as giving him the rights of a passenger upon the road, and the right to ride in the express car if the conductor allowed him to ride in the express car."

The jury found for the plaintiff, and assessed his damages at $22,500. New trial refused, and judgment on the verdict; and

the *Railway Company* bring the case here by petition in error.

*J. P. Usher*, for plaintiff in error:

1. The petition alleges that the defendant for a certain hire and reward undertook to safely carry the plaintiff in its car provided for passengers; the *contract* of carriage is set out with great particularity. The answer is a general denial, with an allegation that plaintiff's injury was caused by his own misconduct.

The cause was tried on the assumption that there was *no contract* of carriage but upon an inference that the plaintiff had made an arrangement with some employee of the express company (whose messengers it was known were carried free in the express cars) to go over the road as a messenger of the express company, and learn the route. In pursuance of this supposed arrangement, he was introduced to defendant's conductor of the train as such messenger; in consequence whereof, and of his handling the express matter, the conductor was deceived in his character and allowed him to pass without paying fare, and to ride, not as a passenger *in the passenger car*, but as an express messenger in the express car. It conclusively appeared that the plaintiff was not in the employ of the express company; and the case was allowed to go to the jury upon the same assumption, that if the conductor *believed* the plaintiff was in fact an express messenger, and so permitted him to ride, the company was liable. And so, the result of the false introduction to the conductor, and the unauthorized conduct of the plaintiff in handling the express matter has been that the railway company, instead of receiving from the plaintiff his proper passenger fare, and carrying him in a passenger car where he would have passed in safety, has received nothing for his carriage, and is called upon to answer to the largest judgment ever rendered for a personal injury.

The action being founded upon a contract, a contract express or implied had to be proved; this was insisted upon at the proper time, but the instruction asked was refused. 40 N. Y.,

168; 13 Ind., 325. Plaintiff had to prove a consideration for the carriage, either paid, or such facts and circumstances as would show he was ready and willing to pay upon demand. This is fundamental; no contract is valid without a consideration to support it: 1 Parsons on Contract, 427 to 430; Bissell's case, 22 N. Y., 307; Muhling's case, 30 Ill., 23; or that the defendant had waived the payment of fare, as in Derby's case, 14 How., 483, and agreed to perform the service gratuitously as in King's case, 16 How., 469 to 474; or that the consideration came from some other source as in the cases cited in 2 Redf. on Rlys., p. 184, No. 11. And in this connection the court erred in the refusal to give the second instruction of defendant; and in giving the modification it misled the jury, inducing them to believe that it was not necessary for the plaintiff to prove that he was received as a passenger, that he had paid fare, or that there was some relation of comity between the parties or between the defendant and others, to whom the plaintiff bore some relation, which in law would make the defendant a contractor and impose an obligation upon it to carry him safely.

2. It is insisted by the defendant that a party is not responsible for the performance of a contract if the same has been entered into in consequence of any material misrepresentation of the party seeking to enforce the performance. And this, whether the party misrepresenting knew it to be false or not. 3 Miss., 477; 13 Peters, 36; 1 Metc., 201; 2 Cowen, 129; 6 Metc., 260; 18 Pick., 96.

· The case in fact went to the jury upon the assumption that the plaintiff was on the train without the authority of the express company, and that it was wholly unnecessary for him to show that he was there by any right; that it was sufficient if he believed he had the right, though that right was based upon the acts of unauthorized persons in no way connected with the defendant, and though in exercising the right dissimulation and deceit was practiced, in which he participated. The court expressly charged the jury that plaintiff need not prove he paid fare, or *contracted* to pay fare! and refused to charge

that it was necessary for him to prove that he was an express messenger!

The defendant never undertook to carry him unless he was in fact an express employee. And there being no contract of carriage, though it may be said that in one sense (as one falsely personates another) the plaintiff was upon the train by the permission of the defendant, the same rule as to care does not apply to a person thus situated as it does to a passenger. This is well settled. The defendant could only be liable for gross neglect; such neglect as would render the defendant liable if the plaintiff had been standing on the track and injured by a passing train. 15 N. Y., 444; 22 id., 305 to 309; 5 Kas., 167. If the defendant in this case can be made liable at all, it will be in an action upon the case for culpable negligence, and that being so, the instructions requiring the care of a carrier of passengers were erroneous.

3. The question of damages cannot be passed without special notice. The interest on this judgment at 7 per cent. is $1,575 per annum, many times as much as is given by way of pension to any soldier or officer who may have suffered in battle; more by half than the wages in the service which the plaintiff was seeking to qualify himself for at the defendant's risk and expense, and more than he possessed the qualifications (so far as the record discloses) to earn in any business, leaving the body of the judgment, $22,500, untouched. It is true, the plaintiff was badly injured; but that is no reason why two and one-quarter times more should have been given him than would have been given a helpless wife and children, if he had had them and been killed outright. There were no circumstances to provoke such vindictive and outrageous damages.

*E. W. Dennis,* also for plaintiff in error:

1. The court below inadvertently fell into the mistake of laying down a distinction totally inapplicable to the case, in regard to the *animus* or *scienter* of the plaintiff, or in other words, between moral and legal fraud. The status of the case could not be affected in any manner by plaintiff's *intent,* or his

moral motive. It is no matter what he thought, purposed, designed or meditated. The question is what did he do and say, and suffer to be done and said for him in this behalf? If he enjoyed a privilege, and now seeks to rest an action on a right which he acquired, if at all, by what was really a legal fraud, it is no reply for him to say what he thought or did not think, or what he believed or did not believe. It was manifestly a misleading error for the learned judge to modify, as he did, . the sixth instruction asked. If the plaintiff was riding in an assumed character, (as the proof is uncontradiced that he was,) by which he was enabled to pass without paying fare, and in a more exposed and dangerous place, it makes no difference with what design he did so. The interpolation, therefore, of the word "falsely," which, in such a connection, means nothing, if it does not imply gross moral fraud, could only mislead the jury.

The fatally misconceived instruction, however, is where he tells the jury that if they "find that the plaintiff acted in good faith, and under the *honest belief* that he had a right to go upon the train, and in the express car," etc., they "will consider the consent of the conductor to carry him without fare, as the consent of the company, and as giving him the rights of a passenger upon the road," etc. It plainly appears that the idea which obtained in the mind of the court, was, that unless a *moral* fraud were meditated by the plaintiff, he must recover. Now with what intent this plaintiff assumed the position he did, upon the occasion of the accident, is not the question at issue; it is, whether such assumption was a *legal* fraud upon the company. The plaintiff was not upon his defense as an accused; he was in court seeking restitution for damage, and claiming a *status* which the testimony in this cause shows that he did not occupy. He was not a passenger by contract, and can claim none of the immunities which pertain thereto. He was not an employee of the express company, as was clearly shown, and could claim no passage under that character; he was there on that occasion in a nondescript attitude, and cannot justly claim to recover, because he had no

legitimate position, as a basis upon which he might ask relief. In the ordinary civil affairs of life, one is bound to accept the consequences of any position he may assume, and if, by development of attending circumstances, it is reduced to a legal fraud, whether premeditated or innocently entered into, yet the fact is not changed, the fraud exists, and no relief can be predicated of the situation. Clearly, to sanction any other view would be subversive of fundamental principles.

2. The damages are grossly excessive, and for this reason the judgment should be reversed. Verdicts so repugnant to reason, and so reckless of the rights of property, as those of which a sample is here brought under notice, must, if not discountenanced by the proper authority, bring the system of trial by jury into disrepute; and the disposition to mulct what appear to be large private corporations, is a tendency, in the minds of juries, so mischevious and so common as to call for grave judicial animadversion with a view to its correction in the interests of justice.

*Martin, Burns & Case*, also for plaintiff in error:

There are three important questions involved in this action, to wit: 1st, If the railroad company is liable at all, can the plaintiff Nichols recover in this form of action? 2d, If he can lawfully recover in this action, are the damages assessed by the jury excessive? and 3d, Under the facts of the case, as presented by the record, can the plaintiff recover at all?

The first and second of these propositions have been fully and sufficiently discussed by Judge Usher and Col. Dennis, and a word need not be added to what they have said. We only wish to present our views of the case under the third proposition.

We insist that he cannot recover, for the plain reason that his injuries are the results of *his own improper conduct*. It is a maxim of the law that "no man shall take advantage of his own wrong;" also, "if one of two innocent parties must suffer by the fraud of a third person, he who first trusted such third person, and placed in his hands the means which enabled

him to commit the wrong, must bear the loss." Nichols, by trusting Warner and McNaughton, voluntarily permitted himself to be placed in a false position, and they did so for Warner's benefit, and Warner well knew that he was placing the plaintiff in a false position, and that it was a fraud upon the rights of the company. Such being the case, Nichols must take the consequences of his reliance upon the statements and conduct of Warner and McNaughton.

The court told the jury that if Nichols *honestly thought* he had a right to be in the express car, and was guilty of no fraud or deception for the purpose of evading the payment of fare, then they must consider *this* the *consent* of the conductor to carry him without fare, and as giving him the rights of a passenger. Now we insist that under the circumstances of this case, the fact that Nichols "honestly thought" he had a right to ride in the express car, and was not guilty of a fraud in order to evade the payment of fare, cannot be construed into a consent on the part of the defendant to carry Nichols *as a passenger*, and as giving him the "rights of a passenger." The rights of a passenger are different from the rights of an employee. The rights of an employee are certainly different from those of a wrong-doer. The rights of a passenger are the highest and most extensive. The rights of an employee, next to the rights of a passenger, are the most important. The rights of a wrong-doer are the slightest; and these different rights all rest upon different and well-defined principles of law. Yet the jury in this case are instructed that Nichols, by a system of misrepresentations that operated as a cheat and a fraud on the rights of the defendant, acquired the rights and privileges of a passenger!

We insist, therefore, that the plaintiff by his own conduct misled and deceived the defendant, and thus put it out of defendant's power or the power of its agents to do those things which they had a right to do, were required to do, and otherwise would have done, in order to prevent any injury to the plaintiff; and the suggestion that the plaintiff, if mistaken, was *honestly mistaken*, and was guilty of no *moral wrong*, is

no sort of an answer to the serious consequences of his own improper conduct. This conduct of his, whether intended or not, in fact did *contribute* in bringing about this result, and the law is, that under such circumstances he cannot recover: 35 N. Y., 516; 34 Mo., 52; 59 Penn. St., 211; 5 Denio, 265; Shear. & Redf. Neg., 34, 37, 39; 30 Penn. St., 454; 15 Ohio St., 567. The plaintiff sought the position in which he was for his own benefit, and we insist upon the application of the rule of law, that "no one can maintain an action for a wrong, when he has consented to the act which occasions his loss," for he cannot make a profit of his own wrong. If the plaintiff can maintain this action, then the court must reverse the rule, that "no man by his wrongful act can impose a duty upon another."

*Clough & Wheat*, and *T. P. Fenlon*, for defendant in error:

1. There was no deception or attempted deception on the part of Nichols; he was in the express car with the consent and knowledge of the conductor; whether he paid fare or not can make no difference; he was entitled to the rights of a passenger: 2 Q. B. L. R., 442; 26 Ill., 373; 30 id., 9; 36 id., 409; 11 Wis., 238; 26 E. L. and E., 444; 10 Exch., 376; 3 Head, 639; 31 Penn. St., 513; 57 id., 339; 14 How., 468; 16 id., 469; 22 Barb., 93; 35 id., 193, 389; 1 Duer, 571; 5 Ind., 340; 7 id., 474; 15 N. Y., 444; 26 Conn., 591; 67 E. C. L. R., 421; 2 Redf. on Rlys., 185; 3 Allen, 18.

2. In the carriage of passengers, and those having the rights of passengers, railway companies are held to the highest degree of care that human foresight can suggest. The evidence in this case shows negligence and a failure on the part of the company to keep its roadway in order, and also shows that the injury to Nichols happened in consequence of the negligence of the company: 3 Hurls. & Colt., 596; 48 E. C. L., 746; 26 N. Y., 201; 34 id., 404; 13 Cal., 599; 8 Penn. St., 482; 49 Me., 279; 2 Redf. on Rlys., 174 to 190; 2 E. L. and E., 360; 35 Barb., 199, 390; 49 id., 558.

3. The evidence is sufficient to show that Nichols was right-

fully on the cars; 25 Vt., 611; 39 id., 78; 7 Metc., 596; 37 Cal., 400; 11 Iowa, 74; 26 id., 9; 14 How., 483; 34 Barb., 353; 52 Penn. St., 382; 12 E. C. L., 134. And it was not at all necessary for Nichols to prove that *he himself* contracted either expressly or impliedly to pay any fare; it was enough for him to make such a case as would show *prima facie* that either he or some other person or company was liable for his fare, or that the Railroad Company, by its conductor, either expressly or impliedly, consented that he should ride without fare. Chitty's Pl., 297.

4. Unless it clearly appears that the verdict was given under the influence of prejudice or passion, the court will not interfere with the verdict on the ground of its amount, and there is nothing in this case to show either. The testimony shows that by their carelessness and recklessness the plaintiff, a young man in the morning of life, is made a mental and physical wreck for life. Who shall say the verdict is excessive? 4 Wis., 78; 23 Wis., 185; 8 Gray, 46, 84; Sedgw. on Damages, 715; 24 Barb., 614; 4 Wallace, 661; 2 Minn., 37; 24 Cal., 513; 25 id., 466; 1 Abbott Pr. R., 366; 1 Allen, 375; 20 Ill., 236, 544; 26 id., 388.

The opinion of the court was delivered by

VALENTINE, J.: This was an action by Nichols to recover for injuries alleged to have been committed by the railway company. The petition of the plaintiff set forth that there was a *contract* between the parties; that the defendant undertook to carry the plaintiff as a *passenger* in a car *used* among other things *for that purpose*, from the State Line near Kansas City to and beyond Monument Station, for a certain *hire and reward*, and that while so carrying the said plaintiff the said injuries were caused through the negligence of the agents and servants of the defendant. But the said petition was not true, and there was no evidence to sustain some of the most material portions of it. We have all the evidence before us, and from that it unquestionably appears that there was *no contract* entered into between the plaintiff and the railway company; the plaintiff

was not a *passenger*, within the true legal signification of the
term; he did not get into or ride in any *passenger car*, and he
did not pay or agree to pay any *hire or reward* for his passage.
The only connection that the plaintiff had with the railway
company was as follows: He went on the train without pur-
chasing any ticket, not into any passenger car, but into the bag-
gage car, and into that portion of the baggage car which was
used and occupied exclusively by the United States Express
Company for their business, and remained there until he
received the injuries of which he now complains. When the
conductor of the train met him in the baggage car, he did not
offer to pay his fare, but allowed himself to be introduced to
the conductor as an express messenger. He was so introduced
by Porter Warner, who had been up to that time, and then
was, in fact, the regular express messenger for that train. And
Warner also represented to the conductor that he " was learning
Nichols the run." During the trip the plaintiff acted as express
messenger, having the keys, and assisted Warner in handling
and delivering the freight of the express company. The con-
ductor, supposing the plaintiff to be an express messenger, and
therefore entitled to ride in the baggage car, and to ride free,
or rather supposing that his fare was paid or arranged for by
the express company in their contract with the railway com-
pany, allowed him to ride in the baggage car, and collected no
fare from him. The conductor made no contract with the
plaintiff, but allowed him to ride on the contract made between
the plaintiff's supposed employer, the express company, and
the conductor's employer, the railway company. The conductor
supposed that the plaintiff was riding in the baggage car, and
free, by authority as high as that under which he himself
acted, and by an authority which he had no power to revoke.
The conductor therefore did not attempt to confer upon the
plaintiff any right to ride upon that train, but simply left the
plaintiff with the right which he supposed the plaintiff already
had, independent of any authority from himself. But the
plaintiff had no such right, nor any right there. He was not
an express messenger, nor was he in the employ of the express

company in any manner whatever. He was there simply by a private arrangement between himself and Warner, and one McNaughton, an agent of the express company at the State Line, "for billing and transferring and delivering goods for the express company." He was there simply learning the route, so that he might be able to take the place of Warner during Warner's absence. But he was not there by any authority of the express company. Neither Warner, nor McNaughton, nor both together, had any authority to put him there. None but the president, vice president, or general superintendent of the express company had any such authority, as is shown by the evidence. But the plaintiff did not even have the authority or consent of the local superintendent of the express company. Therefore he had no right whatever on said train.

Before proceeding further, perhaps, it would be proper to state that the said baggage car ran off the track and was upset, about three miles east of Monument Station, because of a "low joint" in the rail, and injured the plaintiff and one or two others; that "none of the passenger coaches went off the track, so as to injure the coaches or any passengers;" that there were only about twenty passengers on the train during that trip, and that "there was room in the passenger cars for some fifty or sixty more passengers than were on the train;" that "the rules of the company prohibited passengers from riding in the express, mail, or baggage cars;" that the plaintiff was so injured as to impair his mind; and that the verdict of the jury and the judgment of the court were in favor of the plaintiff for $22,500.

Now, so far as the argument or the decision of this case is concerned, it will be admitted that all the rulings of the court below were correct if the plaintiff had been a *passenger* within the true sense of that term. Also, that a regular express messenger is a passenger entitled to receive the same care as any other passenger, so far as the same can be exercised toward him, although nothing be paid for his transportation except what the express company pays to the railway company for transportation generally of their freight and agents. Also, that any

person may be a passenger, entitled to all the rights and privileges of other passengers, without the payment of any fare, if he be on the train with the intention of being a passenger, and with the consent of the company or its officers, provided said consent be obtained without any fraud, or provided said company or its officers have a full knowledge of all the facts. Also, that a regular passenger may be allowed by the conductor the privilege of walking through the cars, or getting on the platform, or into the baggage car, without forfeiting any of his rights as a passenger. And also, that the obligations of common carriers of passengers do not rest wholly or even mainly upon contract, but principally upon the laws of the State in which such carriers do business. But it will not be admitted that any and every person who may enter a car or go upon a train is a passenger, or entitled to all the rights and privileges of a passenger. The employees of the railway company are not passengers, although they may do more riding upon the road than any other class of persons. See the numerous decisions concerning the liability of railroad companies for injuries done to their employees through the negligence of other employees: Shearman and Redfield on Negligence, 101 to 127, ch. 6, and cases there cited. 1 Redfield on Railways, 520 to 537, and cases there cited. Where employees ride upon the road in consequence of their employment, and as employees, paying no fare, they are not passengers, although they may at that time, and on that particular train, not be performing any service for the company: *Higgins v. H. & St. Jo. R. R. Co.*, 36 Mo., 418, 432, et seq.; *Gilshannon v. Stony Brook*, 10 Cush., 228; *Seaver v. Boston & Me. R. R. Co.*, 14 Gray, 466; *Russell v. Hudson River R. R. Co.*, 17 N. Y., 134. A person who enters the cars to see a friend safely seated, is not a passenger: *Lucas v. New Bedford R. R. Co.*, 6 Gray, 64. A person who rides upon the engine of a train with the consent of the engineer, but contrary to a rule of the company, of which he is informed, is not a passenger: *Robertson v. N. Y. & E. Railway Co.*, 22 Barb., 91. And generally, whenever a person goes upon a train or on any

part of the train without authority, he is not a passenger: *Moss v. Johnson*, 22 Ill., 633. It is probably true that the obligation of a common carrier of persons does not rest wholly or even mainly upon contract, but still no person can become a passenger except by a contract either express or implied. " A passenger is a person who *undertakes* with the *consent* of the the carrier to travel in the conveyance provided by the latter, other than in the service of the carrier as such:" Shear. and Redf. on Neg., 292, sec. 262. It is true, that whenever a person who desires to become a passenger on a railroad does all that the law and the rules of the company require of him for that purpose, it will be presumed that the company has given its consent, and that the requisite contract has been made; for in such a case the company could not legally withhold its consent. But whenever it is shown that such person has not done what is required of him, no contract will be presumed. It will then devolve upon such person to show affirmatively that a contract has been made—to show affirmatively that the consent of the company has been given.

In the present case the plaintiff did not do what was required of him in order that he might become a passenger; he did not himself make a contract with the railway company, or any of its agents; and he had no right to ride under the contract made between the express company and the railway company. The consent obtained from the conductor was the consent that *an express messenger* might ride in the baggage car, and without paying his fare. Such consent did not apply to the plaintiff. But if it be said that the conductor applied it to the plaintiff, then it may be answered that it was so done under a misapprehension, induced by the plaintiff himself in allowing himself to be introduced to the conductor as an express messenger, and represented to be such, when in truth and in fact he was not such messenger. This was a legal fraud upon the conductor, and upon the railway company, whatever may have been the intentions of the plaintiff.

There was but little conflict in the evidence in this case— none upon the points we have been discussing. Therefore,

whether the plaintiff was a passenger or not was purely a question of law. If he was a passenger, he was undoubtedly entitled to recover, for the railway company was unquestionably guilty of some negligence in allowing the track of the railway to get out of repair. Whether he was a passenger or not seems to have been considered by the court below as resting almost exclusively upon the moral intentions of the plaintiff. If the plaintiff honestly believed that he did right in doing as he did, or if he honestly believed that the circumstances of the case gave him the right to do as he did, then, according to the view of the court below, he was a passenger. But on the other hand, if he knowingly practised a fraud and deception upon the conductor whereby he was allowed to ride in the baggage car without the payment of fare, he was not a passenger. This theory seems to have run through the whole charge of the court, and the whole case seems to have turned upon it. The court below, therefore, erred in its charge, in some of the instructions that it gave and in some of the instructions that it refused. We think, however, that it made no difference how honest the plaintiff was, nor how he viewed the transaction in its moral aspect.

For the reason that the court erred in charging the jury, and for the reason that there was no evidence to sustain some of the material allegations of the petition, the court also erred in overruling the defendant's motion for a new trial. The judgment is reversed and a new trial ordered.

KINGMAN, C. J., concurred.

BREWER, J., did not sit in the case.