———o———

LAWRENCE LILLIS, Respondent, *vs.* THE ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY COMPANY, Appellant.

1. *Railroad—Commutation ticket—Ejection of holder—Rights and liabilities of company—Passenger and trespasser.*—Where the holder of a 1000 miles railroad commutation ticket, expressed to be "good for six months only," after that period had elapsed, having first obtained legal advice that the ticket was

good till the thousand miles were traveled, and before the ticket was exhausted, took his seat in the baggage car of a train, refused payment of fare otherwise than by offering his ticket, and was forcibly ejected from the train. *Held*, that the ticket was void; that the holder was not a passenger but became a trespasser on entering the baggage car and upon his refusal to get off might be ejected, with the use of any force necessary to that end, and at a point contiguous neither to a station nor dwelling house; that the statute (Wagn. Stat. 307, § 28) had no application to such a case.

2. *Instructions—Evidence—Refusal of.*—Instructions not warranted by the evidence are properly refused.

### *Appeal from Jackson County Circuit Court.*

### *Wells H. Blodgett*, for Appellant.

I. There was absolutely no evidence showing that the relation of *passenger* and *carrier* existed between the plaintiff and defendant.

The testimony of the plaintiff himself shows that he was not a passenger. It shows that he intended to practice a deliberate fraud upon the defendant from the time he entered the baggage car at Kansas City. He knew his ticket had expired, and he says he did not intend to pay his fare.

The relation of passenger and carrier arises out of contract, either express or implied. There can be no valid or binding contract without a consideration to support it, and hence, before the plaintiff could claim to be a passenger, it devolved upon him to prove that he had paid some consideration for being carried; or he was bound to prove that he was ready and willing to pay upon demand. If the plaintiff had purchased and paid for a ticket from Kansas City to St. Louis, the contract would have been express. If he went upon the train intending to pay upon demand, a contract would have been implied; but not having paid, or intending to pay, no contract existed. (Higgins vs. Hannibal & St. Joe R. R. Co., 36 Mo. 433; Nichols vs. Union Pacific Rly. Co., 8 Kas. 519; Robertson vs. New York & Erie Rly. Co., 22 Barb. 91; Moss vs. Johnson, 22 Ill. 640.)

II. The court erred in refusing defendant's sixth instruction. If the plaintiff went into the baggage car not intending to pay his fare, and knowing that his ticket had expired, he was a wrong-

doer, and if he was ejected, without unnecessary force, he cannot complain. The situation was one of his own choosing, and if he suffered any inconvenience from the fact that he was not put off at a regular stopping place, or near a dwelling house, it was a result that flowed directly from his own conduct. A party cannot purposely place himself in the wrong, and then invoke the law to protect him from the direct consequences of his own act. The instruction only assumes that if the plaintiff was wrongfully upon the train, the defendant had the right to eject him at any place, without unnecessary force.

The instruction should have been given ; for if it is not correct a person may, by his own wrongful act, impose a legal obligation upon his victim to protect him (the wrongdoer) from the consequences of his own misconduct. (Terre Haute & Indianapolis R. R. Co. vs. Fitzgerald, 47 Ind. 79.)

III. The first instruction given for the plaintiff was wrong in authorizing the jury to award exemplary damages. There was no evidence of malice on the part of the conductor or his assistants. There was absolutely no evidence of a design on the part of the conductor, or other employees of the defendant, to do plaintiff any great personal injury, nor does the evidence show that the plaintiff had reasonable cause to apprehend immediate danger of such design being accomplished.

*Tichenor & Warner*, for Respondent.

I. Plaintiff entered the baggage car and sat down, no one objecting. No evidence of any rule of defendant against it. He became a passenger. (Edgerton vs. N. Y. & H. R. R., 39 N. Y. 227 ; Illinois Cent. R. R. Co. vs. Sutton, 53 Ill., 397 ; Dunn vs. Grand Trunk R. R. Co., 58 Me. 187 ; Mobile & O. R. R. Co. vs. McArthur, 43 Miss. 180 ; O'Donnell vs. Allegheny Valley R. R., 59 Penn. 239.)

II. But the fact of his being in this car has no bearing on the case, as the injuries complained of did not happen because he was in this car.

III. As the refusal of a passenger to pay fare will not justify homicide, so it fails to justify any act which, in itself, puts human

life in peril, and the passenger has the same right to repel an attempt to eject him, when such an attempt will endanger him, that he has to resist a direct attempt to take his life. (Sanford vs. The Eighth Ave. R. R. Co., 23 N. Y. 343; Wagn. Stat. 446, § 4.)

IV. The instructions on each side stated correctly the law in reference to the use of unnecessary force. (Perkins vs. M., K. & T. R. R. Co., 55 Mo. 202; Wagn. Stat. 307, § 28.)

V. The jury were instructed, that in order to assess any sum as exemplary damages, they were obliged to find that plaintiff was injured maliciously. Evidence showed that the conductor was still in the employ of defendant at time of trial. (Perkins vs. M., K. & T. R. R. Co. *supra*.) This stated the law more strongly in defendant's favor than the law allowed. (Malleck vs. Tower Grove & L. R. R., 57 Mo. 17; Parker vs. Shackelford, 61 Mo. 68.)

HENRY, Judge, delivered the opinion of the court.

On the 18th day of June, 1873, the plaintiff purchased of the defendant a thousand mile ticket, to be used within six months from that date on defendant's railroad. The following is a correct representation of the face of the ticket:

```
1 1 1 1 1 1 1 1 0 2 2 2 2 2 2 2 2 2 3 3 0 0
0 1 1 1 1 1 1·1 2 2 2 2 2 2 2 2 2 3 3 3 3 3

0  0  0                                                          3  3  3
0  0  0    This Ticket is good for 1000 miles traveled on the St. 3  3  3
0  0  0    Louis, Kansas City & Northern Railway and branches,   4  4  0
0  0  0    only when properly stamped and presented, within six  4  4  4
0  0 20    months from date, by                                  4  4  4
0  0 20              LAWRENCE LILLIS,                             4  4  4
0 15  0    under the conditions printed on back.                 4  4  0
0  0 15    * * lbs. baggage paid.                                4  4  0
0 10  0                          F. CHANDLER,                     5  4  0
                                 Gen'l Pas'er. & F't. Agt.
           No. 1324.

0 0 10 0 10 6 6 6 6 6 6 6 6 6 6 5 5 5 5 5 5 5
0 0  0 0  0 0 0 6 6 0 0 0 6 6 5 5 5 5 5 5 5 0
```

On the back of said ticket were the following conditions:

1. "This ticket is good only for passage of the person named thereon, and if presented by any other person, the conductor will take it up and collect full fare.

2. "For each trip, the conductor will punch out figures indicating the number of miles traveled with him on that trip. The holder must in all cases take a train which stops regularly at the station to. which he is going.

3. "No portion of the money received for this ticket will be refunded on account of failure to use it within the specified time, nor will its limits be extended. It will not be good for passage unless presented within the limit named below.

4. "This ticket is good for freight trains, only on the express conditions that the passenger named on it, while on such trains, assumes all risks of accidents and expressly agrees that the company shall not be liable, under any circumstances, whether of negligence by their agents or otherwise, for any injury to the person, or for any loss or injury to the property of the passenger using the ticket, and agrees that he, or she, will not consider the company as common carriers, or liable to him, or her, as such.

5. "This ticket is good only until December 18th, 1873."

On the 9th day of February, 1874, the plaintiff, at Kansas City, entered the baggage car attached to one of defendant's passenger trains, bound for St. Louis, and when the conductor of the train, S. H. Miller, applied to him for his fare, or ticket to his place of destination, he tendered this 1000 mile ticket. The conductor told him he could not pass him on that ticket. Plaintiff said he would not pay his fare. Conductor then told him he would put him off. Plaintiff said "that is all right." The conductor pulled the bell cord and asked plaintiff to get off, and he again said he would not. The conductor then took hold of him to put him off, and plaintiff resisted. This is the plaintiff's own statement. The conductor not being able to eject plaintiff from the car, called to his assistance the baggage master, who also took hold of plaintiff, and told him he had better get off and have no trouble, and remarking to plaintiff that he and the conductor could not put plaintiff off, they left him and went back into the passenger car, but in a short time returned with several other em-

ployees of the company, who finally succeeded in putting plaintiff and his baggage off, at a place about one mile from Harlem station, and four miles from the next station east, and almost six hundred yards from a house north of the road, but whether a dwelling house or not the evidence leaves in doubt. This occurred a little before sunset and plaintiff walked back to Kansas City, arriving there before dark. Plaintiff received a cut on the head and on the little finger, and he testified that at one time during the melee, he had hold of the conductor's coat and the latter struck him a blow on the forehead, and that some one called out to the conductor, don't strike him in the face. Plaintiff offered all the resistance in his power, and is a man of considerable physical strength. We infer from the evidence that he was, physically, a powerful man.

Plaintiff is contradicted by the conductor in regard to the latter striking him, nor is he corroborated in his testimony, on that point, by any other witness. It seems, from his testimony, that he had consulted a lawyer, who gave it as his opinion, that although six months from the date of the one thousand mile ticket had expired, he had a right to ride on the defendant's road, until he had traveled the one thousand miles. He had traveled four hundred and fifty miles on that ticket, and if valid, there were enough miles remaining to carry him to St. Louis. The injuries received by plaintiff did not disable him, or interfere with his business, except to detain him at Kansas City until the next train went east, not exceeding twenty-four hours. Plaintiff sued the defendant to recover damages, and on a trial in the circuit court of Jackson county had a verdict for $3,000, but at the suggestion of the court entered a *remittitur* of $1,000, and judgment was then rendered in his favor for $2,000, from which defendant has appealed to this court.

The court for plaintiff gave the following instructions:

1. "If you believe from the evidence, that the conductor and other servants of defendant, acting under orders of the conductor, forcibly put plaintiff off from the train, and in doing so used unnecessary force, and unnecessarily beat, cut or bruised plaintiff while he was on the train, then the jury will find for the plain-

tiff, and assess his damages at such sum as yóu may believe from the evidence to be a just compensation for the injuries sustained; and if you further find that said plaintiff was so injured maliciously, you may also assess such further sum as exemplary or punitive damages as will be a warning to defendant and its agents, although you may believe that plaintiff offered the conductor a thousand mile ticket, which, according to the printed condition thereon, had expired, and refused otherwise to pay his fare.

2. "If you believe from the evidence, that the conductor and other servants of defendant forcibly put plaintiff, together with his baggage, off from the train of defendant, and did so put him off, not at any usual stopping place, or near any dwelling house, then you must find for plaintiff and assess his damages at such sum as you shall believe, from all the facts and circumstances, to be a just compensation for the injuries sustained by him, if any, but to an amount not exceeding five thousand dollars.

3. "If you believe from all the facts and circumstances given in evidence, that plaintiff, on the 9th day of February, 1874, was on the train of defendant with the intention of going to St. Louis as a passenger thereon, and that while on such train he refused to pay his fare, and had no other than the ticket read in evidence, and that the conductor and other servants of the defendant, under the orders and directions of said conductor, removing or ejecting plaintiff, used unnecessary force, and that plaintiff had reasonable cause to apprehend a design on the part of said conductor or other employees of defendant at such time, to do him some great personal injury, and that there was reasonable cause to apprehend immediate danger of such design being accomplished, then, in either of such cases, the plaintiff had a right to resist and repel force with force."

Instructions for defendant, given by the court:

1. "It is admitted by the pleadings in this case, that the plaintiff, on the —— day of February, 1874, entered upon a train of defendant's cars at Kansas City, for the purpose of being conveyed from Kansas City to the City of St. Louis, and it is admitted that plaintiff presented to the conductor of said train a ticket, dated on the 18th day of June, 1873, which said ticket was by

its terms good for one thousand miles of travel on the defendant's railroad, only when the same was presented within six months after the date thereof; and the jury is instructed that the ticket, as presented by plaintiff, was at said time worthless and void, and that the conductor of said train was not bound to receive the same, nor was the plaintiff, on the —— day of February, 1874, entitled to travel upon said ticket in the defendant's cars from Kansas City to any other point upon said road, and if the jury further find from the evidence that the conductor of said train stopped the same near a dwelling house, and requested the plaintiff either to get out of said car or pay his fare, and that plaintiff refused either to get out of said car as requested, or pay his fare as requested, and that the conductor then called to his assistance the brakeman and other employees of defendant on said train, and that two or more of them thereupon took hold of plaintiff and ejected or expelled him from said car, and put him and his baggage out upon the ground without using any more force than was necessary in order to overcome his resistance and remove him from said car, then the plaintiff cannot recover in this action for any injury he may have received or sustained, by being so ejected or expelled from said car."

2. "Although the jury may find from the evidence that plaintiff did receive some personal injury in being ejected or expelled from the defendant's car; yet, if the jury further find from the evidence that the plaintiff, after being informed by the conductor that the ticket used in evidence was worthless and void, refused upon the request of the conductor, either to pay his fare or go out of said car, and quit said train, and that said train was then stopped near a dwelling house, and that when the conductor and other employees of defendant afterwards attempted to remove him, he resisted them, and that his said injuries were caused solely in consequence of the force necessarily used in overcoming his resistance, then he cannot recover in this action on account of any personal injury so received."

3. "The jury are instructed that the term "near a dwelling house," as used in the foregoing instructions, does not mean that such dwelling house should be immediately adjoining the track

of the railroad at the place where the train was stopped ; but it means a dwelling house so conveniently near, as to enable plaintiff to reach the same without exposing his person to unusual hardship or danger, or his baggage to loss or damage."

4. " Although the jury may believe from the evidence, that plaintiff was not ejected from the defendant's car near a dwelling house, as that term is defined in the foregoing instructions ; yet, if the jury further find that plaintiff refused to pay his fare or quit said train, after he was informed by the conductor that the ticket read in evidence was worthless and void, and that the conductor and brakeman thereupon ejected him from said train without unnecessary force, then the plaintiff can only recover in this action such damage as he sustained by reason of there being no dwelling house near the point where he was put off said car."

5. " If the jury find from the evidence in this case that plaintiff was ejected from the train in question near a dwelling house ; then under the pleading in this case he cannot recover for any personal injury he may have sustained, unless he has shown, to the satisfaction of the jury, that unnecessary force was used in ejecting him from said car."

Instruction refused : 6. " If the jury find, from the evidence, that the plaintiff knew the terms and conditions of the ticket read in evidence, and that with such knowledge he did on the 9th day of February, 1874, enter and remain in a baggage car attached to a passenger train on the defendant's road, with a design of being conveyed upon said ticket from Kansas City to St. Louis, without paying or intending to pay to the defendant any fare, and that he refused to pay his fare after the same was demanded of him by the conductor, then the jury is instructed that the plaintiff did not become a passenger upon said train, and the conductor thereof had a right to stop said train at any place, and use sufficient force to expel or eject the plaintiff and his baggage from said car without rendering the defendant liable in this action."

The court refused to give the said instruction No. 6, and defendant excepted.

The instruction asked by defendant and refused by the court presents the question, whether on the facts in this case plaintiff was a passenger on defendant's train, and as such entitled to the rights and immunities secured to passengers by the law.

. It is evident that plaintiff entered the train determined not to pay any fare, but to travel upon his one thousand mile ticket, or be ejected from the train. He at no time offered to pay any fare, declared repeatedly that he would not, and had previously taken the opinion of a lawyer, who had advised him that he had a right to ride on defendant's road until he had traveled the entire number of miles specified, without regard to time.

He knew the conditions printed on the back of the ticket; and on its face was an express printed stipulation that the ticket was good, "when properly stamped and presented within six months from date by Lawrence Lillis, under the conditions printed on the back."

He testifies that he knew what the conditions were. When the conductor refused to carry him on that ticket, he did not leave the train when ordered to do so—which he might have done and instituted a suit if he desired to test the correctness of his lawyer's opinion, that he had a right to ride on that pass—but by physical resistance, compelled the conductor to call to his assistance three or four other employees to eject him from the car. That he went into that car with the deliberate purpose of laying the foundation for a law suit, with no intention of becoming a passenger unless he could by muscular power compel the conductor to carry him, is from the evidence in the case beyond all controversy, and he was as much a trespasser as if he had gone into that express car to rob it of its contents. Under these circumstances, is he to be regarded as a passenger? We think not, and to hold otherwise would be to disregard well established principles, which in cases between individuals no court would hesitate to recognize.

Merchants, shop keepers and hotel keepers, by the very nature of their respective occupation, give a general invitation to all persons to enter their houses of business, but if one enter one of these business houses for the purpose of pilfering or committing

some other depredation, and is ejected, he cannot have an action for the trespass, and the general license given to enter would avail him nothing in a suit against the proprietor. He might recover if more force were used than was necessary to put him out, but the general implied invitation would not be allowed to be considered by a jury in determining the amount of his damages.

In the Union Pac. R. R. Co. vs. Nichols, (8 Kas. 505) the facts were that plaintiff was introduced to the conductor of the train by the express messenger, as an express messenger learning the route; that the conductor supposing him to be as represented, allowed him to ride in the baggage car without paying any fare. The baggage car was turned over, injuring the plaintiff seriously—for which he sued the company and recovered a judgment for $22,500. The Supreme Court held that " the plaintiff was not a *passenger*, within the true legal signification of the term, he did not get into or ride in any *passenger car*, and he did not pay or agree to pay any *hire* or *reward* for his passage."

Here plaintiff did not pay *any fare* but positively refused to do so—expressly refused to make a contract by which the relation of passenger and carrier would be established between him and the company.

The case of Robertson vs. N. Y. & E. R. R. Co., (22 Barb. 92,) was one in which plaintiff, with knowledge that the engineer had no authority from defendant to permit him to ride upon the engine, by the permission of the engineer did ride upon it and was injured by reason of the negligence, or want of skill, of defendant's employees while so riding.

The Supreme Court of New York held that " he was a wrong doer the moment he stepped his foot upon the engine, and so continued until he was injured, and could not recover."

If a wrong doer, it must have been because he had no right to ride on the engine. In the case at bar, plaintiff had no right to ride on that train on his one thousand mile ticket, and he knew it because the stipulation on the face, and the indorsements on the back, of the ticket, were clear and explicit to that effect. He went into that car not intending to acquire a *right* to ride on that train, but to compel the conductor to pass him on a void

ticket, or to make a case for a suit for damages. His entry into the car was made with an evil intent, and he is entitled to no favor, but only to the rights which the law gives a trespasser.

The cases cited by appellee's counsel as authorities for the position that plaintiff is to be regarded as a passenger, do not support it. In 53 Ills. plaintiff entered the caboose car of a freight train which, by a rule of the company, was forbidden to carry passengers, but sometimes did carry passengers, and there were passengers then on the train with tickets procured from the company.

Plaintiff tendered his fare to the conductor who refused to receive it, and put plaintiff off of the train.

The court held that he was a passenger. The difference between that and the case at bar is so palpable that it needs no comment, and an equally striking difference will be observed between this and the case in 53 Ill., 58 Me., 43 Miss., and 59 Penn. If plaintiff had no right to ride on defendant's train, on that ticket, the conductor had a right to put him off; and not being a passenger, it makes no difference, whether at the station, or near a dwelling house or not, because § 28 (Wagn. Stat. 307,) has in that case no application. He had no right to use any more force than was necessary to eject plaintiff, but had a right to use as much force as was necessary for that purpose.

The first instruction given by the court for plaintiff, in telling the jury that if plaintiff was injured maliciously they might give exemplary or punitive damages, was not warranted by the evidence.

If there is any portion of the evidence tending to prove malice on the part of the employees it has escaped our attention; nor have we overlooked the fact that plaintiff testified that the conductor struck him a blow on the head with his fist, when he was literally tearing the conductor's clothes from his body. The third instruction was erroneous in telling the jury that, if plaintiff had reasonable cause to apprehend a design on the part of the employees of defendant to do him some great personal injury, and that there was reasonable cause to apprehend immediate danger,etc., then he had a right to resist and repel force with force.

The evidence discloses no reasonable cause which plaintiff had to apprehend anything of the kind. He at any moment after the trouble commenced could have terminated it by leaving the train. If the conductor had the right to put him off, it was his duty to go off without being forced to do so.

If defendant had a right to put him off, he at the same time could not have a legal right to resist. He could not resist the conductor in the discharge of a duty and the exercise of a right, and by that resistance acquire a right to resist any necessary force to overcome it. There was no danger to be apprehended by plaintiff except what his resistance occasioned. We can find nothing in the evidence tending to prove that the employees of defendant had any intention of doing more than was necessary to eject plaintiff from the train. It is surprising, however, that even under those instructions the jury should have rendered a verdict against defendant for $3,000.

Judgment reversed and cause remanded. The other judges concur.