Donaldson v. Everhart.

THOMAS DONALDSON *et al.* v. S. A. EVERHART.

1. MORTGAGE, *Action to Cancel — Failure of Consideration — Evidence.* Where Mrs. E. brought her action to cancel a mortgage executed by herself and husband to D., upon a homestead owned by her, on the ground that the consideration of $5,000 mentioned therein had wholly failed, because D. had not paid, advanced or loaned any part thereof, and D., the defendant, being the holder of the mortgage, after admitting the execution and recording, denied only generally the allegations of the petition, *held*, that it was not competent for D. to show, by written contracts, letters and other testimony between the husband and D., that D. received such mortgage as collateral security for the payment of debts of the husband, when it appeared from the evidence of D. that he had never had any conversation with Mrs. E. before or after the execution of the mortgage, and when the husband, as witness of D., testified that, in making all of his arrangements with D., he acted for himself alone, and not for anybody else. *Held*, Further, that the declarations of the husband to others were not admissible to prove that he acted as agent of his wife.

2. JUDGMENT — *Conflicting Evidence — Witnesses — Credibility.* Where the finding and judgment of a trial court are sustained by sufficient evidence, the supreme court cannot reverse the judgment because the evidence of the plaintiff and that of the defendant were directly contradictory to each other. Where a cause is tried before a district judge without a jury, upon oral testimony, the trial judge, if sufficient evidence is offered to support the judgment, must decide as to the credibility of the witnesses and the weight of their testimony.

*Error from Pratt District Court.*

ACTION to cancel a certain mortgage. Judgment for plaintiff, *Everhart*, on February 15, 1889. The defendants, *Donaldson* and others, bring the case to this court. The opinion states the facts.

*A. L. Greene,* for plaintiffs in error.

*T. B. Wall,* and *J. C. Ellis,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: On the 14th day of February, 1889, Mrs. S. A. Everhart commenced her action against Thomas Don-

aldson and E. A. Munch, to set aside and cancel a note of $5,000, dated June 7, 1888, and a mortgage to secure the same, of the same date, on lot 2, in block 7, in Pitzer's addition to the city of Pratt, executed by Mrs. S. A. Everhart and her husband, J. T. Everhart, to Thomas Donaldson, of Waterbury, Conn. It was filed for record on the same day of its execution, but at the time of the commencement of the action the note and mortgage were in the hands of E. A. Munch, in Pratt county, for Thomas Donaldson, who resided in Connecticut. Mrs. Everhart alleged in her petition that the note for $5,000, and the mortgage given to secure it, were executed in consideration of a promise by Donaldson that he would advance to her husband, J. T. Everhart, $5,000, to be used by him in the loan business in which he and Donaldson had been engaged for a long time prior thereto; that Donaldson wholly failed to perform his agreement upon his part, and, therefore, that there was no consideration for the note and mortgage. The defendants in their answer admitted the execution of the mortgage of the 7th of June, 1888; that it was duly recorded, but made a general denial as to all the other allegations contained in the petition. Mrs. Everhart on her part testified:

"Well, Mr. Everhart and Mr. Donaldson came up to dinner and brought the mortgage with them to sign, and Mr. Donaldson said he had brought out $5,000 with him for Mr. Everhart to use, and continue in the loan business as heretofore. If he would do this, (give him the note and mortgage for $5,000,) he would feel safe, and continue in the business. I told him that Mr. Everhart and I had talked it over, and I had at first refused, because I could not or did not want to give a mortgage on my home; but finally we concluded, as times were a little hard, and the $5,000 would help him greatly in carrying those people (persons to whom Everhart had made loans for the benefit of Donaldson) longer, and he would not have to take the mortgaged property and sell it — we talked it over in that way, and if he (Donaldson) would give him the $5,000 to loan, I would give a $5,000 mortgage."

Mrs. Everhart testified, upon cross-examination, that —

"Ques. You say you had some conversation about this

mortgage, and your husband made arrangements with Mr. Donaldson with regard to executing it; did he do this before or after he came up to the house? Ans. They had talked the matter over.

"Q. Did Mr. Everhart act for you in the talk and conversation in reference to this mortgage? A. No.

"Q. Did he have any interest in the property? A. No; it was my own."

Miss Lulu Everhart testified as follows:

"Ques. What relation are you to the plaintiff in this action? Ans. The daughter.

"Q. Are you acquainted with the defendant, Thomas Donaldson? A. I am.

"Q. Did you ever hear the defendant, Thomas Donaldson, say anything with reference to the $5,000? A. I have.

"Q. Do you remember now what he said? A. Yes, sir.

"Q. You may state to the court what you heard him say. A. A day or so after Mr. Donaldson came, I was at the office helping papa and Mr. Donaldson fix up the notes. After they had gone over them, Mr. Donaldson says: 'Everything seems to be all right, and I have brought out $5,000 which I will let you have if you will give me a mortgage on your home, and we will continue in the business as heretofore, and I will feel safe in the matter.'"

Thomas Donaldson testified among other things, as follows:

"Ques. I will ask you to state whether or not you have advanced to J. T. Everhart any money since the 7th day of June, 1888? A. No, sir.

"Q. Are you the owner at this time of the $5,000 mortgage executed and delivered to you by Mrs. Everhart and husband, together with a note, in June last? A. Yes, sir.

"Q. You may state, Mr. Donaldson, if you ever had any conversation with Mrs. Everhart with regard to this mortgage. A. I never did, sir; not one word.

"Q. Did you ever have any conversation prior to the time the mortgage was executed to you? A. No, sir.

"Q. Since that time? A. Not a word.

"Q. I will ask you to state, Mr. Donaldson, whether or not, at the time this mortgage was executed to you, you knew this property was in her [Mrs. Everhart's] name? A. Not until Mr. Everhart told me at that time.

"Q. When did you arrive here in Pratt in 1888? A. I think it was Thursday, the 24th (of May).

"Q. What time did you arrive here on Thursday, the 24th? A. At 9 o'clock.

"Q. Wasn't it a fact you did bring $5,000 with you? A. Yes, sir.

"Q. What for? A. If the business looked as it should, I fetched it out here to loan on short time.

"Q. Who was to loan it? A. Mr. Everhart.

"Q. You brought it for that purpose? A. Yes.

"Q. When did you send that money back? A. The next day.

"Q. What time the next day? A. I could not be positive, but I think I sent that money back the next forenoon.

"Q. That was the forenoon you had the talk with Mrs. Everhart? A. No, I did n't.

"Q. Why did you conceal it? A. I did n't have any conversation with Mrs. Everhart.

"Q. You boarded there, and yet never mentioned the fact you had brought $5,000? A. No.

"Q. You stayed at Mr. Everhart's all the time you were here? A. Yes, sir.

"Q. When did you leave Pratt and go to Waterbury, Conn.? A. I can't tell the date exactly; it must have been, well — what is the date of that contract?

"Q. Well, say the contract was about the 26th of May? A. It was near the last day of June.

"Q. You stayed at Mr. Everhart's all the time except when you were in Sumner county? A. Yes, sir."

Although Donaldson filed a general denial only to the allegations of the answer, other than those concerning the execution of the note and mortgage in controversy, he claimed upon his part that the mortgage of June 7, 1888, for $5,000, was given him by J. T. Everhart, with other notes and mortgages amounting to $17,150.13, as collateral security for the payment of $19,850; that whenever Everhart collected the note of $17,150.13, and paid in full the sum of $19,850, with 12 per cent. interest thereon, the note and mortgage of $5,000, properly released, were to be returned to him; and that Everhart was still in debt to him, and had not complied fully with his contract. A written contract, dated the 26th day of June, 1888, to this purport, signed by Thomas Donaldson and J. T. Everhart, was offered in evidence, and Donaldson

attempted to show by various letters from J. T. Everhart, and also by the testimony of Mr. Barnes, that the mortgage was executed as collateral security, and not, as alleged by Mrs. Everhart, to obtain $5,000 of additional money to loan. The written contract and letters of J. T. Everhart were excluded, as were also Mr. Barnes's statements about the conditions upon which the $5,000 mortgage was executed.

We do not think that there was any error in the exclusion of the oral and written testimony offered by Donaldson. The legal title of the real estate described in the mortgage of the 7th of June, 1888, was in the name of Mrs. Everhart. It was her homestead, as it was occupied as a residence by her family. It is immaterial whether the improvements were paid for by her or her husband. It could not be mortgaged without the joint consent of both. There is no testimony in the record showing or tending to show that Mrs. Everhart authorized her husband, J. T. Everhart, to deliver the mortgage of $5,000 to Donaldson or anyone else, as collateral security for debts, or upon any written or oral contract of her husband. It was not proposed to show by the witness Barnes that he had any conversation with Mrs. Everhart, or that he knew from her anything about the conditions upon which the mortgage was executed. What he learned from J. T. Everhart, the husband, or from the written contracts executed by the husband in his own name, would not bind Mrs. Everhart, unless J. T. Everhart was her duly-authorized agent.

Donaldson introduced J. T. Everhart as his witness, and after stating that the property mortgaged was in his wife's name and belonged to her, he further testified:

"Ques. I will get you to state, Mr. Everhart, if you made the arrangements with Mr. Donaldson for the execution, and the conditions upon which this mortgage should be executed? Ans. Yes.

"Q. In making these arrangements, I will get you to state for whom you acted? A. For myself.

"Q. For anybody else? A. No, sir.

"Q. You wrote that mortgage? A. Yes, I wrote it.

"Q. Who delivered it to Donaldson? A. I did.

"Q. Who was present when you delivered it?   A. I do n't remember of anybody.

"Q. Who authorized you to deliver it to him?   A. No one authorized me; nothing said about it.

"Q. Did you have any authority to deliver it to him? A. No.

.   .   .   .   .   .   .   .   .   .   .   .

"Q. You may state why you joined in the execution of that mortgage with your wife?   A. Because we meant to give Mr. Donaldson a $5,000 mortgage.

"Q. Was there any other reason why you joined in the execution of that mortgage with your wife?   A. Yes.

"Q. You may state what other reasons there were?   A. That he agreed to do certain things, and for that reason we gave him the mortgage.

"Q. What did he agree to do?   A. That he would then continue with me in the loan business as heretofore; that he had brought out this $5,000, and wanted to let me have that.

"Q. Was it given to secure that difference?   A. No.

"Q. Was it given to secure $5,000 that he was to loan you?   A. Yes, sir."

The evidence of Everhart no way connected his wife with the delivery of the mortgage as collateral security for old debts, or upon any written contract prior to that date.   The testimony offered by Donaldson tended to contradict and impeach Everhart, and if he had been introduced as a witness in her behalf by Mrs. Everhart, and had been ·permitted to testify, then much of the written and parol evidence offered by Donaldson would have been competent; but as Everhart was his witness, not the wife's witness, the testimony to contradict and impeach him was wholly incompetent, and as the contracts and letters of Everhart were in no way shown to have been written or signed by Mrs. Everhart, their rejection followed as a matter of course.   Neither was Mrs. Everhart bound by the written contract referred to in the evidence of J. T. Everhart, because it did not purport to be signed by her or for her.

Upon the cross-examination of Mrs. Everhart, it was attempted to be shown that she knew the amount of money owed by her husband to Donaldson; that she had executed

a prior mortgage to Donaldson for $1,200, on property belonging to herself and husband; and that, after the execution of the $5,000 mortgage, her husband had brought her a mortgage, ready for her signature, on her homestead. If Donaldson had shown, by himself or other witnesses, that Mrs. Everhart had agreed with him to secure the debts of her husband by the $5,000 mortgage, or gave the mortgage to have other mortgages released, this testimony and other might have been competent; but Donaldson stated in his examination that "he never had a word of conversation with Mrs. Everhart regarding the $5,000 mortgage before or after its execution." Nothing was said by her to Donaldson or anyone about the release of any prior mortgage. The declarations of a supposed agent are not admissible to prove agency; nor are the declarations of an agent, after a transaction, evidence of agency. (*Railway Co. v. Nichols*, 8 Kas. 505; *Machine Co. v. Clark*, 15 id. 492; *Railway Co. v. Stults*, 31 id. 752.) Therefore, any declarations made by J. T. Everhart to others were not admissible to prove that he was the agent of his wife, Mrs. Everhart.

Finally, it is contended that judgment should have been entered for Donaldson upon the evidence. It cannot be claimed that there was a failure of evidence to support the general finding of the trial judge; therefore we cannot disturb the judgment, even if the finding of the trial judge were against the weight or preponderance of the evidence. But, upon the record as presented, the evidence is more favorable to Mrs. Everhart than to Donaldson. "Testimony on paper is not like testimony from the lips; and when a trial judge hears the living voices and sees the witnesses who utter it, believes one and disbelieves others, we cannot decide that the judge, having better opportunities than we, ought to have believed and found the other way." (*Railway Co. v. Kunkel*, 17 Kas. 145.)

The judgment of the district court will be affirmed.

All the Justices concurring.