ROBOSTELLI *v.* NEW YORK, N. H. & H. R. Co.

*(Circuit Court, S. D. New York. January 31, 1888.)*

1. CARRIERS—PASSENGERS — SAFE CARRIAGE — HOLDER OF NON-TRANSFERABLE TICKET.

If a passenger on a railroad train, in good faith, and without attempt to conceal his identity, present for his passage a non-transferable commutation ticket issued to another, and his claim is recognized, and he is carried as a passenger, he is entitled to the right of a passenger to be carried safely, and to have a safe place to alight and leave the road.

2. SAME—CARRIAGE OF PASSENGERS—RUNNING TRAIN PAST STATION— RATE OF SPEED.

The running of a railroad train at a high rate of speed, at an unusual hour, and without warning. past a train standing at a platform discharging its passengers, who, to reach their destination, must cross the track of the moving train, is evidence not only of neglect of common care, but of recklessness and gross negligence.

3. NEGLIGENCE—CONTRIBUTORY—CROSSING TRACKS FROM DEPOT.

Whether or not a passenger on a railroad train, in alighting upon a track running at the side of ·the train, instead of at the platform, is guilty of negligence, is a question of fact for the jury to determine from all the circumstances.

4. SAME—CONTRIBUTORY—PROVINCE OF JURY.

In an action against a railroad company for the death of plaintiff's intestate, after the jury were instructed that the plaintiff could not recover if the want of ordinary care on the part of the deceased contributed to the injury, a juror asked if the fact that deceased had alighted upon that side of the track before would give him the right to do so again, to which answer was made that this was all left to the jury. *Held* that, in view of the former instruction, the answer was not misleading.

At Law. On motion for a new trial.

Action by Maria Robostelli, administratrix of the estate of Joseph Robostelli deceased, against the New York, New Haven & Hartford Rail-

road Company for the death of plaintiff's intestate.   Verdict was rendered for plaintiff, and defendant moved for a new trial.

*Charles H. Noxon*, for plaintiff.

*Robert D. Benedict* and *Henry W. Taft*, for defendant.

WHEELER, J.   This suit is brought upon a statute of the state of New York to recover damages for causing the death of the plaintiff's intestate. Code Civil Proc. § 1902.   It has now been heard on motion of the defendant for a new trial.

The defendant's railroad has two tracks.   There was also a track turning off southwardly towards Harlem river, at New Rochelle Junction, with a platform between that and the other tracks.   Owen Roehrs lived at West New Rochelle, a village on the opposite side of the main tracks, and had a house there, and a commutation ticket entitling him to ride between New Rochelle and New York, but not transferable.   New Rochelle Junction was between New Rochelle and New York.   It was on the time-tables as a station to which tickets were sold, and at which some passenger trains stopped.   Passengers going to West New Rochelle on trains stopping at the junction were in the habit of getting off on the side opposite to the platform, and going across the other track, without objection, to a gate, and to that village.   The platform was used principally for passengers of the Harlem river branch.   The intestate was employed in New York, and bought Roehrs' house at West New Rochelle, and Roehrs told him that he might have his commutation ticket with the house. He took the ticket and moved into the house, and, on two Saturday evenings, rode from New York to the junction on the train stopping there at that time of the evening, on that commutation ticket, about which the conductor made no question, got off the train with others on the side opposite the platform, and went across the other track to the gate, and to his house.   On the next Saturday evening, October 15, 1886, he took the same train, leaving New York at nine minutes past five, and rode on the commutation ticket, without objection, to the junction, in company with another man going to West New Rochelle.   The train arrived at the junction a little after the evening began to be dark.   There was no light on the platform.   The name of the station was called out, and the conductor got out on the platform with his lantern.   The intestate followed his companion to the rear platform of the car in which they had been riding, his companion stepped off on the side opposite the platform, and onto the other track, and, seeing a train coming, sprang across, and called to the intestate to stop.   The water-boy on the platform of the next car noticed this call, and, although he did not see the train, spoke to the intestate to come that way.   He did not appear to hear or to understand either, and stepped off as the train went by at a speed of 25 or 30 miles an hour, and was struck by, or drawn into, the train, and instantly killed.

The defendant requested that a verdict be directed in its favor, on the grounds that the intestate was not entitled to the rights of a passenger; that there was no evidence of any negligence or wrongful act for which

the defendant was liable; and that the evidence showed that he was guilty of contributory negligence. This request was denied, and the jury instructed that if he, in good faith, presented the commutation ticket for his passage, and his claim was recognized, and he was carried as a passenger upon it, he was entitled to the rights of a passenger to be carried safely, and to have a secure place to stop at and leave the road; but that if he was endeavoring to pass himself off to the conductor as Roehrs, and to get carried for nothing, when he knew he was not entitled to ride in that manner, the defendant was under no obligation to carry him, or to afford him a chance to stop safely, otherwise than by not exposing him to dangers occasioned by gross negligence; that if any want of ordinary care on his part contributed to produce his death, the plaintiff was not entitled to a verdict in any event; but if not, and it was gross negligence or reckless carelessness to run the other train past this one at such high speed when this one was stopped for passengers to get off, and who might get off onto the track on which that train was running, the plaintiff would be entitled to a verdict whether he was entitled to the rights of a passenger or not; and if not, and he was entitled to the rights of a passenger, and it was not reasonably safe, in view of the whole situation to run the other train by at that speed, the plaintiff would be entitled to a verdict. After the instructions to the jury were concluded, a juror asked whether that he had got off safely on that side before would give him the right to get off there again, to which answer was made that this was all left to the jury.

The principal grounds upon which this motion is urged are the rulings in respect to the commutation ticket, the refusal to direct a verdict for contributory negligence, and the ruling in respect to a safe place to get off the train and leave the road. It is assumed in argument that the presentation of the ticket was itself such a fraud as to make him a trespasser, or an intruder, and that his motive would not make any difference with its legal effect. There are cases where it is held that the moral intentions make no difference; but, so far as observed, they are not cases where the question of becoming an ordinary passenger was involved alone, but where the question of liability with respect to other relations was also concerned. In *Railroad Co.* v. *Beggs*, 85 Ill. 80, the plaintiff was riding on a free pass issued to another person; in *Railroad Co.* v. *Nichols*, 8 Kan. 505, the plaintiff was allowed to ride in the baggage car as an express messenger when he was not such; in *Railroad Co.* v. *Moore*, 49 Tex. 31, the person was riding on a freight train; so in *Eaton* v. *Railroad-Co.*, 57 N. Y. 382. But here, the intestate was in the passenger car, on a passenger train, claiming to be a passenger on the commutation ticket, and his claim was recognized. The conductor was a witness, and did not claim that he thought the intestate was Roehrs, nor that he did not know either of them. The conductor had charge of requiring tickets, and implied authority to accept or reject persons as passengers on tickets presented by them. Railway Accident Law, § 215. In *Railway Co.* v. *Harrison*, 10 Exch. 376, there was a commutation ticket issued to a newspaper for certain reporters, naming them, and not trans-

ferable. A reporter on the same paper, not of those named, was permitted to ride upon it. Whether he was a passenger or a trespasser was left to the jury. This was held to be correct. COLERIDGE, J., said there "was evidence that would make it wrong to say the plaintiff was a trespasser in the cars." In *Austin* v. *Railway Co.*, L. R. 2 Q. B. 442, children under three years of age were carried free, and over three and under twelve for half fare. The plaintiff was three years and two months old, and was carried in his mother's arms. She bought a ticket for herself, but not for him. No questions were asked by the ticket agent or conductor. His leg was broken, and the question arose whether the defendant owed him any duty. It was said by BLACKBURN, J.:

"The fact of his being a passenger casts a duty on the company to carry him safely. If there had been fraud on the part of the plaintiff, or he had been taken into the train without defendant's authority, no such duty would arise."

The claim of the right to ride, made in good faith, with acquiescence of the conductor in the claim, would seem to amount to a good contract of carriage. Railway Accident Law, § 215. These authorities and considerations appear to warrant submitting the question of good faith, in claiming the right to ride on the commutation ticket, to the jury.

As the jury may not have found that the intestate made the claim in good faith, the verdict may rest upon the finding of gross negligence or carelessness in so running the other train past the one he was leaving as to make the leaving it dangerous. That it was the duty of the defendant to provide safe means of exit from the train for passengers, is not disputed. The exit was not safe if so contrived as to lead the passengers into danger. Passengers for West New Rochelle, stopping at this station, could not reach there from the train on the track which this train was on without crossing the other track. They could get off onto the platform, and go past the end of the train and cross, or get directly down on the other side and cross. If they should get off onto the platform, and wait for the train to leave, they would still have to cross; and there was no shelter there or other conveniences for waiting. The train could not pass on the other track without the liability of encountering these passengers, and if it passed while the train was standing, and the passengers alighting and leaving, it would be quite likely to encounter them when attempting to cross by the rear of the other train, or from its platforms, while the cars would obstruct their view. No whistle was blown to give warning of the approach of the train, which was behind time, and not expected at that hour. To run a train at such high speed past another discharging passengers likely to step directly into its path, without warning, would seem to be evidence not only of neglect of common care, but of recklessness and gross negligence.

A remaining question, and the one most relied upon in behalf of the defendant, is whether the evidence was such, with reference to the exercise of due care by the intestate, as to warrant submitting it to the jury. The defendant does not complain about the manner of its submission, but insists that there was no question upon it but that the verdict should

be for the defendant. In *Railroad Co.* v. *Mares*, 8 Sup. Ct. Rep. 321, (December 19, 1887,) the court below had instructed the jury that the burden of proving contributory negligence was on the defendant; and this ruling was approved. In this case the burden was left upon the plaintiff, as to the whole, by requiring her to establish that her intestate was killed by the fault of the defendant, without any contributory fault of his own. In either view, however, the plaintiff could not rightfully recover if the contributory negligence appeared, whether from the evidence of the defendant or that of the plaintiff. There are many cases where it has been held that to go within harmful reach of a moving railroad train when seeing it, or without looking, is of itself such negligence as to preclude recovery for any injury therefrom received. Among them are *Railroad Co.* v. *Heilman*, 49 Pa. St. 60; *Same* v. *Beale*, 73 Pa. St. 506; *Railroad Co.* v. *Houston*, 95 U. S. 697,—which, with some others, are relied upon by the defendant here. This is unquestionable if that is all; but there may be other circumstances to control, or entitled to weight, to the contrary. In *Railway Co.* v. *Slattery*, L. R. 3 App. 1155, the plaintiff's intestate crossed the track, where there was a sign up giving notice not to cross, but where people were in the habit of crossing, to get a ticket, and in passing behind a train, which had just come to the station and stopped, onto another track, was struck by a fast train which came from the opposite direction on that track, and which was hid from his view by the other train, and killed. The question whether he was guilty of contributory negligence was submitted to the jury, who found for the plaintiff. The house of lords, on much debate, and with some diversity of opinion, approved of this ruling. Here the plaintiff's intestate was about to leave the train where passengers had been accustomed to without objection. The tracks were only six feet apart, and the projection of the cars beyond the rails would leave but two or three feet of space between those of the passing train and those he was leaving. He was going by the way of the rear platform, and the other train was coming from the other way, and the car would hide it from his view until he had descended the steps far enough to see past the end of the car, and he was about at that point when the train rushed by. Whether he had got so far before he could see it that he could not stop, or was drawn into it by the effect of its motion in the air, or kept along towards it after he saw it, or might have seen it, is not clear. The natural instinct of intelligent beings to avoid harm would be some evidence that he did not voluntarily go into the reach of it, after seeing it, to receive injury from it; and the fact that passengers were accustomed to go that way, and he had safely done so before, may have furnished just ground for his undertaking to go that way again. There were questions of fact presented which must be decided by drawing inferences from the circumstances to determine how far he had got, and what he was doing about taking care of himself, when he was struck. If he was led to take that way to leave the train by the situation of the platform and the usual route to the gate, and thence to the village, and was struck by, or drawn into, the train before he had a chance to look, or while about to look, he might not be wanting in the

exercise of the care of a prudent man under the circumstances. The plaintiff had the right to have all these questions of fact passed upon by the jury. This right was guarantied to her by the supreme law of the land in the eighth amendment to the constitution. And this right involved, not only the existence of the facts themselves, but the inferences as to the exercise of due care to be drawn from the facts when established. *Mangam* v. *Railroad Co.*, 38 N. Y. 455; *Patterson* v. *Wallace*, 1 MacQ. 748; *Railroad Co.* v. *Stout*, 17 Wall. 657.

The answer to the juror's inquiry is argued to have been misleading. This argument might be well founded if the answer had been all the instruction there was on the subject. But instructions had been given to take the whole situation, as found to exist, into consideration to determine whether there was any want of due care in taking the way which the intestate took to leave the train. The answer merely reminded the jury that the circumstance inquired about was to be considered with the others. Giving this answer would not appear to make necessary going over the whole again.

Let judgment be entered on the verdict.