# MAGENAU, ADMINISTRATOR, *v.* AETNA FREIGHT LINES, INC.

No. 439. Argued May 18, 1959.—
Decided June 15, 1959.

*Harry L. Shniderman* argued the cause for petitioner. With him on the brief were *M. Fletcher Gornall, Jr.* and *William W. Knox.*

*William F. Illig* argued the cause for respondent. With him on the brief was *John E. Britton.*

MR. JUSTICE CLARK delivered the opinion of the Court.

This is a diversity case for wrongful death of petitioner's decedent, who was killed when a tractor-trailer leased by respondent crashed off a Pennsylvania highway. The action was tried to a jury on a negligence theory and judgment went for petitioner. 161 F. Supp. 875. The Court of Appeals reversed, finding that under Pennsylvania law the decedent was an employee of respondent and that the Pennsylvania Workmen's Compensation Act, Purdon's Pa. Stat. Ann., 1952, Tit. 77, provided the exclusive remedy. 257 F. 2d 445. We granted certiorari, 358 U. S. 927, on the question whether, in the light of *Byrd* v. *Blue Ridge Rural Electric Cooperative, Inc.,* 356 U. S. 525 (1958) (decided after this case was argued in the Court of Appeals), the matter of the relationship of the decedent to respondent was a jury question. We have concluded that *Byrd* does control that issue and that the judgment must therefore be reversed.

Respondent is an interstate motor carrier of freight certificated under the Interstate Commerce Act. It had leased a tractor-trailer, complete with driver, from one Fidler, an independent contractor. Its lease contract, which had been in effect for four years, required Fidler to furnish the driver as well as to keep the leased equipment in repair. In this connection the evidence indicates that Fidler had authorized his driver, where circumstances required, to hire services and purchase necessities on trips of this kind. The vehicle and driver leased by respondent were en route from Syracuse, N. Y., to Midland, Pa., with 36,000 pounds of steel when the mishap leading to

decedent's death occurred. The trip from Syracuse had been so beset with difficulties, such as tire replacements, battery trouble and brake failure, as well as bad weather, that it had already consumed 7 days' time. Under ordinary conditions 20 hours of elapsed time would have been sufficient. During a stop at a tavern near Waterford, Pa., the driver, Schroyer, was talking to the tavern keeper about his truck troubles when decedent and his cousin entered the place. Schroyer offered the cousin $25 to accompany him for the remainder of the trip and, upon refusal, made the same offer to decedent. The latter accepted. While the evidence is weak on the point, the indications are that decedent's job was to aid the driver in the event further trouble with the truck was encountered. Decedent was experienced with cars and had worked for a short time as a mechanic. Schroyer and decedent proceeded in the truck-trailer toward their destination, with the former driving. Some hours later the vehicle was found off the road on the downside of an embankment. Both men were dead.

This action ensued, in which petitioner alleged negligence on the part of Fidler and respondent for continuing to operate the vehicle with knowledge of its defective brakes. Liability of respondent was rested upon the rule that its status as a certificated carrier made it liable for the negligence of Fidler, its independent contractor, whose motor equipment was operated under the former's I. C. C. certificate. This is the law of Pennsylvania, *Kissell* v. *Motor Age Transit Lines,* 357 Pa. 204, 209, 53 A. 2d 593, 597.[1] Petitioner's theory was that his decedent was an invitee on the tractor-trailer, and that Fidler and his driver, Schroyer, therefore, owed decedent

---

[1] Also see 49 Stat. 557, as amended, 49 U. S. C. § 315, which provides that a certificate holder must carry insurance to satisfy any final judgment for injuries due to the "negligent . . . use of motor vehicles under such certificate."

a duty of due care for breach of which respondent was liable under its I. C. C. certificate. Respondent claimed that decedent was a trespasser and, under Pennsylvania law, that it was therefore liable only for wanton misconduct. After discovery had been exhausted, respondent moved for summary judgment on the ground that the circumstances of decedent's engagement by Schroyer created an employer-employee relationship between it and decedent under the State workmen's compensation statute. The motion was denied and the case went to trial. It was submitted to the jury on special interrogatories covering the issues as to liability and a general charge as to the damages. The trial judge entered judgment on the special issues and the damage verdict for $76,500.

Interrogatory No. 1,[2] the meaning of which is now in controversy, inquired as to whether it was "reasonably necessary for the protection of defendant's [respondent's] interests" to engage decedent. The Court of Appeals held that the affirmative answer of the jury classified decedent as respondent's employee bringing him within the general definition of § 104 of the Pennsylvania Workmen's Compensation Act.[3] It noted that respondent had

---

[2] "Interrogatory Number 1. Under the evidence in this case, do you find that an unforeseen contingency arose which made it reasonably necessary for the protection of the defendant's interests that the driver Charles Schroyer engage the decedent Norman Ormsbee, Jr. to accompanying him for the remainder of the trip?"

[3] Section 104 of the Pennsylvania Workmen's Compensation Act, Purdon's Pa. Stat. Ann., 1952, Tit. 77, § 22, Cum. Supp., provides:

"The term 'employe,' as used in this act is declared to be synonymous with servant, and includes—

"All natural persons who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer, and exclusive of persons to whom articles or materials are given out to be made up, cleaned, washed, altered, ornamented, finished or repaired, or adapted for sale in the worker's own home, or on other premises, not under the control or management of the

conceded that decedent was its "casual" employee but that this was not enough to take him out of the Act's coverage for, in addition, such casual employment must "not be in the regular course of business" of respondent. This, the Court of Appeals said, was a question of law under Pennsylvania practice and open to review. It held that the finding under Interrogatory No. 1 put decedent "into the regular business" of respondent. This holding would call for the dismissal of this suit, as petitioner's exclusive remedy would be under the Pennsylvania Workmen's Compensation Act.

Since the keystone of the Court of Appeals' holding depends on its interpretation of Special Interrogatory No. 1, we note the views of the trial judge on that issue. In his opinion on the motion of respondent for judgment *non obstante verdicto,* he observed that "the interrogatory . . . was not so phrased as to require the jury to determine whether decedent was an employee of Aetna." Rather, it "was simply to secure a finding from the jury as to the reasonable necessity of Schroyer engaging decedent." 161 F. Supp., at 878. Likewise during the trial, in a colloquy with counsel as to this interrogatory, he advised: "[Y]ou notice there I refrain from saying just what his [decedent's] status is. I don't think it necessary to have the jury find whether he was employed or not; I think that is a question for the law." On balance we believe that an examination of the record supports this interpretation of Interrogatory No. 1, although it must be admitted that the apparently inadvertent use of the words in "protection of the defendant's interest" in the interrogatory may have been taken in a different light by the jury.

---

employer. Every executive officer of a corporation elected or appointed in accordance with the charter and by-laws of the corporation, except elected officers of the Commonwealth or any of its political subdivisions, shall be an employe of the corporation."

Be this as it may, however, not only the question of the relationship of the decedent to respondent should have been submitted to the jury but, in order to meet § 104's definition, it should likewise have passed upon whether the employment, if any, was "casual" and not "in the regular course" of respondent's business. Our opinion in *Byrd* came down subsequent to argument in the Court of Appeals. As we said in that case "An essential characteristic of [the federal system] is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury . . . [assigning] the decisions of disputed questions of fact to the jury." *Byrd* v. *Blue Ridge Rural Electric Coop., supra,* at 537. We found there that the South Carolina rule in compensation cases, permitting courts to decide such factual issues without the aid of juries, was not "announced as an integral part of the special relationship created by the statute." *Id.,* at 536. We held that under such circumstances "the federal court should not follow the state rule." *Id.;* at 538. The same reasoning applies here. We have been given no reason for the distinction in the Pennsylvania practice of trying such disputed factual issues to the court. Respondent does not claim that the rule is an "integral part of the special relationship" created by its statute but rather that the disputed issue of employment was in fact submitted to the jury. It cannot be gainsaid that all of the disputed issues were not so submitted. In order to determine whether the Pennsylvania Act bars recovery here the court must have a full answer as to the status of the decedent as an employee under § 104 of the Act. If the jury, under proper instructions, finds facts which show that, under § 104, the decedent was respondent's employee and that such employment was "casual" and not "in the regular course" of respondent's business, then it can find for petitioner.

We are therefore of the opinion that a new trial on the whole case is necessary, since these disputed issues are so interrelated with the ultimate issues of liability and damages that a limited hearing would not be in the interest of fairness and efficiency in judicial administration. If the evidence on that trial is such as to justify with reason different conclusions on the factual issues as to the relationship of decedent as an employee, under § 104 of Pennsylvania's Act, of either respondent or its contractor, Fidler, resolution of those issues, along with others that arise from the evidence, will be for the jury. The jury's verdict at that trial will determine if as well as in what amount petitioner may recover in this action.

*Reversed and remanded.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE HARLAN and MR. JUSTICE STEWART join, dissenting.

The issues in this case have had a shifting history. Today the problem of the case appears to be cast into these questions: was the issue of decedent Ormsbee's employment submitted to the jury and, if not, should it have been? But at trial the evidence massed on both sides was to prove or disprove that decedent was a trespasser. In the course of showing he was something other than a trespasser, petitioner introduced evidence which tended to prove that decedent was in fact a temporary employee of respondent, hired by the truck driver to aid in an emergency. Respondent countered by urging that the evidence introduced by petitioner, if believed, proved decedent was an employee of Aetna and therefore, under applicable Pennsylvania law, deprived petitioner of a common-law remedy against Aetna. The trial judge, believing employment to be a question of law, reserved until after the verdict a ruling on the effect of the Penn-

sylvania Workmen's Compensation Act, Purdon's Pa. Stat. Ann., 1952, Tit. 77, §§ 22, 52, 462. And so, putting aside this question, and keeping the original issue regarding the status of decedent as a trespasser in mind, the judge framed one of the four interrogatories submitted to the jury to elicit its opinion whether decedent was or was not a trespasser. The jury found that he was not by answering the following interrogatory in the affirmative:

> "Under the evidence in this case, do you find that an unforeseen contingency arose which made it reasonably necessary for the protection of the defendant's interests that the driver Charles Schroyer engage the decedent Norman Ormsbee, Jr. to accompany him for the remainder of the trip?"

The jury also returned a general verdict for petitioner.

In his opinion refusing Aetna's motions for a new trial or judgment notwithstanding the verdict, the trial judge reasoned that the Pennsylvania Act did not bar petitioner's recovery at common law because the nature of decedent's employment did not, under the Pennsylvania decisions, bring him under the Workmen's Compensation Act. 161 F. Supp. 875. The Court of Appeals disagreed with the trial judge's interpretation of the interrogatory, of the Pennsylvania statute and of the decisions thereunder. Reviewing the jury's verdict for decedent's administrator, that court held that the affirmative answer to the interrogatory necessitated a finding that decedent was an employee of Aetna within the definition of that status in the Pennsylvania Act and that therefore the only remedy was under that Act. 257 F. 2d 445. In so doing, the court was applying to facts as found by a jury the law made applicable to the parties to this action by *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, and the Rules of Decision Act, 28 U. S. C. § 1652.

Petitioner now asserts that our opinion in *Byrd* v. *Blue Ridge Rural Electric Cooperative, Inc.*, 356 U. S. 525, required the jury in the federal courts to decide the issue of employment and that the jury did not make that determination here. To agree with this second proposition we must either find that the Court of Appeals totally misinterpreted the answer of the jury to the interrogatory or that the rule stated in *Byrd* requires not only that disputed questions of fact be submitted to the jury but also that the application of law to facts likewise rests with the jury. The former ruling would deviate from the settled practice of this Court to accept the interpretation of proceedings below adopted by the Court of Appeals unless that interpretation is baseless.[1] Moreover, the ruling of the Court of Appeals was based primarily on an interpretation of Pennsylvania law and not on an extrapolation from the jury's finding. Judge Goodrich held that "[w]e cannot escape the conclusion that the [jury] finding that authorized the hiring of Ormsbee put him into the regular business of the defendant, namely, transportation of goods by truck. If that was not what he was doing, he had no business riding with Schroyer at all." 257 F. 2d, at 448. Thus the Court of Appeals applied the jury-found facts to the court-interpreted statute and said that the Pennsylvania law barred a common-law remedy. We should not review here the finding of the Court of Appeals on the meaning of the Pennsylvania statute. This Court has repeatedly deferred to decisions on local law reached by the lower federal courts.[2] What reason is there to

---

[1] See, *e. g.*, *Labor Board* v. *Pittsburgh S. S. Co.*, 340 U. S. 498, 502–503; *Federal Trade Comm'n* v. *American Tobacco Co.*, 274 U. S. 543.

[2] *Railroad Comm'n* v. *Pullman Co.*, 312 U. S. 496, 499; *Reitz* v. *Mealey*, 314 U. S. 33, 39; *MacGregor* v. *State Mutual Life Assurance Co.*, 315 U. S. 280, 281; *Helvering* v. *Stuart*, 317 U. S. 154, 162–163, modified on other grounds, 317 U. S. 602; *Palmer* v. *Hoffman*,

deviate from that practice in this case? The meaning given to the Pennsylvania statutory language and to the cases interpreting it was the determination of three uncommonly experienced Pennsylvania circuit judges. Finally, no prior federal case would justify a ruling that in the federal courts application of law to fact is a jury function.[3] Nor does historical analysis support the assumption that such was the case at the time of the adoption of the Seventh Amendment.[4] Whether a given set of facts constitutes an employment relationship is a pure question of law and as such not within a jury's province. The charge, interrogatory, and answer thereto, as reasonably interpreted by the Court of Appeals, do not permit the conclusion that issues were withheld from the jury which were within its sphere of power, duty, and capability.

But suppose it be correct to conclude that the Court of Appeals erred in its opinion that the jury resolved all relevant factual inquiries. Still the petitioner has no case

318 U. S. 109, 118; *Huddleston* v. *Dwyer*, 322 U. S. 232, 237; *Hillsborough* v. *Cromwell*, 326 U. S. 620, 630; *Steele* v. *General Mills, Inc.*, 329 U. S. 433, 438–439; *Gardner* v. *New Jersey*, 329 U. S. 565, 575; *Francis* v. *Southern Pacific Co.*, 333 U. S. 445, 447–448; *Estate of Spiegel* v. *Commissioner of Internal Revenue*, 335 U. S. 701, 707–708; *Propper* v. *Clark*, 337 U. S. 472, 486–487; *Ragan* v. *Merchants Transfer & Warehouse Co.*, 337 U. S. 530, 534; *Skelly Oil Co.* v. *Phillips Petroleum Co.*, 339 U. S. 667, 674; *United States* v. *Gerlach Live Stock Co.*, 339 U. S. 725, 755; *Williams* v. *United States*, 341 U. S. 97, 100; *Sutton* v. *Leib*, 342 U. S. 402, 411; *Bernhardt* v. *Polygraphic Co.*, 350 U. S. 198, 204–205; *id.*, at 209, 212 (concurring opinions); *General Box Co.* v. *United States*, 351 U. S. 159, 165; *id.*, at 169–170 (dissenting opinion).

[3] Cf. *Ex parte Peterson*, 253 U. S. 300, 310: "The limitation imposed by the [Seventh] Amendment is merely that enjoyment of the right of trial by jury be not obstructed, and that the ultimate determination of issues of fact by the jury be not interfered with."

[4] See Scott, Trial by Jury and the Reform of Civil Procedure, 31 Harv. L. Rev. 669, 684–686 (1918).

that should prevail here. For not only did the petitioner fail at trial to request the question of employment to be submitted to a jury, he himself stated during the course of the trial that employment was a question of law.[5] And when the trial judge said that he believed that as a question of law it ought not to be submitted to a jury, the petitioner did not claim otherwise.[6] Indeed it was the respondent who requested that the question be submitted to the jury and who objected when this request was refused. I shall continue to believe it to be law in civil cases in the federal courts that, barring some extraordinary circumstances not here present, failure to request a given issue to be submitted to a jury constitutes a waiver of any right to such submission.[7] The least requisite for raising such failure on appeal is notice to the trial court by way of an objection.[8]

Certiorari was granted upon a petition which urged that the Court of Appeals had so ruled as to deprive petitioner of the right to a jury determination of employment status and thus that the case raised the same basic question as that dealt with by this Court in *Byrd*. More particular consideration than could be expected to be given to the petition for certiorari [9] has made it apparent

---

[5] "The Court: In other words, the finding of trespasser is a conclusion of law.

"Mr. Knox (attorney for petitioner): The same as employees." Transcript of Record, p. 173a.

[6] "The Court: I don't think it is necessary to have the jury find whether he was employed or not; I think that is a question for the law." Transcript of Record, p. 169a.

[7] See, e. g., *Pennsylvania R. Co.* v. *Minds*, 250 U. S. 368, 375; *Shutte* v. *Thompson*, 15 Wall. 151, 164.

[8] Fed. Rules Civ. Proc., 49, 51.

[9] "We are not aided by oral arguments and necessarily rely in an especial way upon petitions, replies and supporting briefs. Unless these are carefully prepared, contain *appropriate* references to the record and present with *studied accuracy, brevity and clearness*

that neither statement is correct. The briefs on the merits and oral argument made it inescapably clear that petitioner failed to present a case which qualifies for our consideration in the light of the historical development of our certiorari jurisdiction [10] and the rule which we have promulgated to guide its exercise.[11] This is an ordinary diversity case turning solely on the application of Pennsylvania law to a unique set of facts and involving no question which justifies review under our discretionary jurisdiction. When the Court has discovered, even after argument, that there existed no question suitable for this Court's determination, certiorari has been dismissed as improvidently granted.[12] The reasons for such a disposition of a case even after argument—action so often taken as fairly to be part of the settled practice of the Court—were thus expounded by Mr. Chief Justice Taft:

"If it be suggested that as much effort and time as we have given to the consideration of the alleged conflict would have enabled us to dispose of the case before us on the merits, the answer is that it is very important that we be consistent in not granting the writ of certiorari except in cases involving principles the settlement of which is of importance to the public as distinguished from that of the parties, and in cases where there is a real and embarrassing con-

---

whatever is essential to ready and adequate understanding of points requiring our attention, the rights of interested parties may be prejudiced and the court will be impeded in its efforts properly to dispose of the causes which constantly crowd its docket." *Furness, Withy & Co.* v. *Yang-Tsze Ins. Assn.*, 242 U. S. 430, 434.

[10] See *Dick* v. *New York Life Ins. Co.*, 359 U. S. 437, 447 (dissenting opinion).

[11] Rules of the Supreme Court of the United States, Rule 19.

[12] *Layne & Bowler Corp.* v. *Western Well Works, Inc.*, 261 U. S. 387.

flict of· opinion and authority between ˙the circuit courts of appeal. The present case certainly comes under neither head." [13]

And so, since upon full consideration of this case it becomes clear that the complained-of error was probably not committed˙ and that in any event petitioner is not in ˙a position to assert it, due regard for the controlling˙ importance of .observing the conditions for the proper. exercise of our discretionary jurisdiction requires that the writ of certiorari˙ should be dismissed as improvidently granted. ·

MR. JUSTICE HARLAN, whom. MR. JUSTICE ˙STEWART joins, dissenting.

˙Plenary·consideration of this case, and indeed the opinion of the majority of this Court, have made it clear· that the Court of Appeals dealt· with·the factual˙ issues˙ involved on the basis of a concession by the respondent and the jury's answer to Interrogatory No. 1. ˙ It is therefore·now apparent that˙this case presents no. question concerning the classification of these issues˙as for the court ˙or for the˙jury under the decision in *Byrd* v. *Blue Ridge Rural Cooperative, Inc.,* .356 U. S. 525, and that the premise on which we granted certiorari was accordingly a mistaken one. And whether or not.the Court of Appeals in acting as it did was correct in.its assessment of the trial record is certainly not a matter justifying the exercise of .our certiorari power within the˙ criteria of Rule 19. I therefore agree with my Brother FRANKFURTER that the writ˙ of certiorari should be dismissed as improvidently granted, and join in his dissenting opinion.

˙Even if a *Byrd* issue could be considered as properly presented, the most that should be done is to remand the

---

[13] *Id.,* at 393.

case to the Court of Appeals for further consideration in light of that decision. A retrial of this case would be justified under *Byrd* only if the Pennsylvania practice treating factual issues under § 104 of the Workmen's Compensation Act as for the court, instead of for the jury, see *Persing* v. *Citizens Traction Co.*, 294 Pa. 230, 144 A. 97; *Vescio* v. *Pennsylvania Electric Co.*, 336 Pa. 502, 9 A. 2d 546, is merely a "form and mode" of procedure rather than "an integral part" of the rights created by the Act. Before deciding such a difficult and subtle question of local law, this Court should have the aid of the Court of Appeals whose members are more competent than we to speak on Pennsylvania law.