Albert J. SCHAUB, Plaintiff-Appellee,

v.

CALDER VAN AND STORAGE COMPANY, a foreign corporation, and as franchise affiliate of Allied Van Lines, Inc., Defendant-Appellant.

No. 13684.

United States Court of Appeals
Seventh Circuit.

Oct. 4, 1962.

Rehearing Denied Nov. 16, 1962.

———◆———

James C. Herrick, Frank J. Bucaida, Madison, Wis., for appellant.

Frank A. Loss, Jr., Philip L. Kapell, Madison, Wis., for appellee.

Before HASTINGS, Chief Judge, and CASTLE and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

This diversity action was brought in the District Court by Albert J. Schaub, plaintiff-appellee, against Calder Van and Storage Company, defendant-appellant, to recover for personal injuries. The injuries are alleged to have been occasioned by defendant's negligence. The complaint alleges that plaintiff was in the employ of Whalen Transfer and Storage Company, Madison, Wisconsin, and engaged in loading furniture into defendant's moving-van when an inclined ramp leading into the van became dislodged causing the plaintiff to fall with it to the pavement beneath. The defendant's answer included as a separate and distinct special defense an allegation that plaintiff at the time of the injury was an employee of the defendant and that the Wisconsin Workmen's Compensation Act provided an exclusive remedy. The case was tried to a jury which returned a verdict for the plaintiff upon which the District Court entered the judgment from which defendant has appealed.

The defendant contends that the trial court erred in denying defendant's request that the special verdict submitted to the jury include the question of whether plaintiff at the time of the accident was an employee of defendant, and in refusing to instruct the jury on that issue.

In this connection the defendant argues that from the evidence the jury could have reasonably inferred and concluded that at the time of the injury plaintiff occupied the status of an employee of the defendant under the "loaned employee" doctrine as recognized and applied under Wisconsin law.

In so far as they relate to plaintiff's employment status at the time of the incident giving rise to his claim the facts are not in dispute. On this phase of the case there is no conflict in the testimony.

In the forenoon of the day of the accident plaintiff worked for Whalen Transfer and Storage Company as a packer at a residence in Madison preparing household items for moving by van. Plaintiff was not a regular employee of Whalen but for some years had worked for it part-time, intermittently, and was paid on an hourly basis. The furniture and other household items were to be loaded and moved by the defendant, Calder Van and Storage Company. Calder had sent its driver and van from Iowa for that purpose. Whalen had been engaged to do the packing but the loading and transporting was to be done by Calder. The loading and hauling was Calder's listing. Whalen and Calder were affiliates of Allied Van Lines, Inc., and it is the practice of an Allied system affiliate when it arrives at a destination to pick up a load to secure the help to do the loading from the local Allied affiliate. Calder's van arrived at Madison with its driver only. Calder relied on Whalen to furnish loaders.

Plaintiff had finished the packing at noon. Calder's driver had stopped at Whalen's office to obtain help to do the loading. Whalen asked plaintiff: "Well, Bud, will you stay out there and help? I will send Mr. Hamachek and your driver out." Hamacheck was an employee of Whalen who reported each day and worked if work was available. Plaintiff remained at the residence where he had been packing and when the Calder driver and Hamacheck arrived he assisted in the loading of the Calder van. Defendant's driver directed the loading

activities. The loading was the driver's responsibility and he issued the orders. The loaders worked under the driver. He was the "boss man". If the driver had not been satisfied with the help he could have sent them home. The plaintiff was aware of this and that defendant's driver was in control of plaintiff's activities in loading the van.

Late in the afternoon, while plaintiff was carrying a carton up the ramp which led into the van the ramp or "walk board" became dislodged and the accident occurred. The loading took 4¼ hours. The defendant's driver receipted for and certified to the hours plaintiff worked in loading the van. Whalen paid plaintiff for such time at his regular hourly rate of $1.60 per hour but charged Calder at the rate of $3.00 per hour per man. On occasions when plaintiff had done loading for other than Allied affiliates he had been paid by the driver in cash.

In Springfield Lumber, Feed & Fuel Company v. Industrial Commission, 10 Wis.2d 405, 102 N.W.2d 754, the Wisconsin Supreme Court had occasion to observe (p. 409, 102 N.W.2d p. 757):

"The essential tests to be applied in determining whether a loaned employee retains his employment with his original employer, or becomes the employee of the special employer, are set forth in Seaman Body Corp. v. Industrial Comm., 1931, 204 Wis. 157, 163, 235 N.W. 433, 436, as follows:

" 'The vital questions in controversies of this kind are:

" '(1) Did the employee actually or impliedly consent to work for a special employer?

" '(2) Whose work was he performing at the time of the injury?

" '(3) Whose was the right to control the details of the work being performed?

" '(4) For whose benefit primarily was the work being done?' ".

But the court had earlier cautioned in Braun v. Jewett, 1 Wis.2d 531, 537, 85 N.W.2d 364, that the "apparent simplicity" of the tests suggested in Seaman can be "deceptive" when it comes to their actual application. And in Rhinelander Paper Company v. Industrial Commission, 206 Wis. 215, 217, 239 N.W. 412, 413, it had been pointed out that:

"Whether or not there is in a particular case such a change of relationship is often a matter of great difficulty and as to which reasonable minds may come to different conclusions."

■ Springfield Lumber, supra, also recognizes (10 Wis.2d p. 410, 102 N.W.2d p. 757) the holding in Brown v. Industrial Commission, 9 Wis.2d 555, 569, 101 N.W.2d 788, that:

"When the facts are undisputed and only one reasonable inference is to be drawn therefrom, a question of law and not one of fact is presented."

But it is only where but one reasonable inference may be drawn from undisputed facts that the question is for the court rather than the jury. Even though there be no conflict in the evidence if the inference to be drawn therefrom is doubtful or uncertain, and there is credible evidence which under a reasonable view will support or admit of an inference either for or against a claim or contention of either party, then the rule is that the proper inference to be drawn therefrom is for the jury. Wadoz v. United National Indemnity Co., 274 Wis. 383, 391, 80 N.W.2d 262; Weber v. Walters, 268 Wis. 251, 67 N.W.2d 395. It is the jury, not the court, which is the fact-finding body and the very essence of its function is to select from among conflicting inferences that which it considers most reasonable. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520.

■ From our analysis of the above decisions and other Wisconsin cases cited by the parties we are convinced that under Wisconsin law when a question of the employment status of a loaned employee arises in the jury trial of a suit brought

by the employee against the special employer that issue is one for jury determination although the facts are undisputed if the inferences which may be drawn therefrom reasonably admit of different conclusions. And, under the Wisconsin cases, it is evident that the question of employment status of a loaned employee has not as "an integral part of the special relationship" created by the Wisconsin Workmen's Compensation Act become an issue committed by local policy to the court's determination rather than to jury resolution. Cf. Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 and Magenau v. Aetna Freight Lines, Inc., 360 U.S. 273, 79 S.Ct. 1184, 3 L.Ed.2d 1224.

■ Although Whalen was interested in the loading of the defendant's van to the extent that it involved fulfillment of a reciprocal commitment as an Allied system affiliate to supply loaders and to the extent that it profited by the arrangement through receipt of more than it paid the plaintiff, the loading was primarily for the benefit of the defendant, Calder. The listing was Calder's. The loading was its work, and was performed under its control and direction. Whether, in view of the relationship between plaintiff and Whalen, and the fact that plaintiff was paid by Whalen for the time he spent loading any Allied affiliate, the words spoken by Whalen to plaintiff concerning his remaining to assist with the loading here involved require the inference that they were a command and direction that plaintiff do the work and accept the orders and directions of Calder's driver, although they were couched in the form of a request or inquiry, or admit of the inference that they were merely an invitation extended to plaintiff, subject to his acceptance or rejection, to be freely exercised without prejudice to the continuance of his relationship with Whalen—the relay of information that the opportunity to do the work existed if plaintiff so desired—that Calder sought to utilize plaintiff's services to do

its work, are conclusions with respect to which reasonable minds could differ. In Magenau, supra, it does not appear that the inferences to be drawn from the facts were more uncertain than here and the Supreme Court reversed because of a failure to properly submit an analogous employment status issue to the jury and held that if on a retrial of the cause the evidence was such as to justify with reason different conclusions on the employment relationship issue the resolution of that question would be for the jury.

The issue concerning plaintiff's employment status was presented by the pleadings. It is our opinion, on the facts presented by this record, that the issue was one for the jury's determination and that the District Court erred in rejecting the question defendant requested be included in the special verdict for the purpose of submitting that issue to the jury.

■ We find no merit in plaintiff's contention that defendant's motion for a directed verdict which included the ground that plaintiff was defendant's employee, which motion was denied, precluded the defendant from having the issue submitted to the jury.

In view of the conclusions we have reached it is unnecessary that we consider other contentions made by the defendant.

■ Plaintiff has requested that in event this Court reverses and remands the cause for a new trial that we limit the new trial to the issue of whether or not plaintiff was an employee of Whalen or of the defendant. That there are circumstances under which a new trial may properly be limited to a single issue was recognized by this Court by the observations it made and the cases it cited in Yellow Cab Co. v. Keane, 7 Cir., 93 F.2d 290, 291. But the nature and the facts of each case must determine whether the retrial shall be of all the issues. Magenau, supra, in addition to involving an analogous employment status issue, gave

consideration to the question of whether on the reversal a new trial on all issues should be awarded. Mr. Justice Clark, speaking for the majority, said:

> "We are therefore of the opinion that a new trial on the whole case is necessary, since these disputed issues are so interrelated with the ultimate issues of liability and damages that a limited hearing would not be in the interest of fairness and efficiency in judicial administration."

In view of the precedent thus afforded we deny plaintiff's request.

The judgment order of the District Court is reversed and the cause remanded for a new trial.

Reversed and remanded.