**Kenneth B. TOBIN, Plaintiff,**

v.

**Florence S. GREENBERG, Defendant.**

**No. 86 Civ. 1034.**

United States District Court,
S.D. New York.

May 14, 1987.

Terrence Ryan, Suffern, N.Y., for plaintiff.

Richard V. Licata, New City, N.Y., for defendant.

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

Plaintiff in this diversity action seeks $250,000.00 in damages for "non-economic loss," that is, pain and suffering, allegedly sustained when defendant drove her car into the rear of plaintiff's car while plain-tiff had stopped his car at a red light. Defendant now moves for summary judgment contending that under New York law, which applies in this case, plaintiff has not suffered a serious injury entitling him to bring a suit for non-economic loss.

The New York statute known as the no-fault law regulates personal injury claims arising out of the negligent use or operation of a motor vehicle. New York Insurance Law § 5101, *et seq.* Section 5104(a) of the no-fault law limits an injured party's right to recovery for non-economic loss to those cases involving "serious injury." Section 5102(d) defines "serious injury" as:

> "personal injury which results in death; dismemberment; serious disfigurement; a fracture; loss of a fetus; permanent loss or use of a body organ, member, function, or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."

Plaintiff, a full-time student and part-time security guard, claims he sustained a "serious injury" that significantly limits the use of a body function or system, entitling him to recover for consequential pain and suffering. Plaintiff describes his injuries in paragraph 10 of his Answer to Interrogatories, a copy of which was submitted on this motion:

> "Severe cervical sprain;
> Straightening of cervical lordosis;
> Pain and limitation of motion on rotation of head to the right and posteriorly;
> Radiation of pain into right upper extremity, resulting in limitation of use of the arm;
> Pain and difficulty in using gear shift because of pain in right arm and co-ordi-

nating shifting with left lower extremity."

It is not disputed that at the scene of the accident, plaintiff did not request an ambulance or any medical treatment. Afterwards, he drove his car to the college he attends, spent two hours in class, and then worked an eight hour shift at his job as a security guard. Plaintiff claims he began to experience pain about one-half hour after the accident. He first sought medical treatment with his family physician the next day, and was treated by him over the next four months for the injuries described. Plaintiff was prescribed muscle relaxant and anti-inflammatory medications.

In layman's terms, plaintiff claims that he suffers from chronic, intermittent pain and stiffness in his neck and right shoulder, often brought on by activities involving the joints and muscles in those areas. Damp, humid or cold weather reportedly aggravates the stiffness and pain; in good weather plaintiff has no neck pain, but stiffness persists. Plaintiff also complains of continuing anxiety and depression "brought about by his loss of mobility and his inability to carry out, as before, his daily routines," including his inability to perform certain household chores or participate in "pick-up games of softball, touch football, and the like."

The physician hired by defendant to examine plaintiff agrees in substance with the diagnosis, except to observe that, taking into account plaintiff's resistance to all movements of his head and neck, the limitation of cervical rotation is minimal. Defendant's physician further describes many of plaintiff's complaints as subjective, in other words, not amenable to medical corroboration.

At issue here, and crucial to the maintenance of plaintiff's claim, is whether the injury described constitutes "serious injury" within the meaning of section 5102(d). As might be expected, plaintiff's physician has submitted an affidavit that plaintiff's injury is serious under the statute, falling within the category "significant limitation of use of a body function or system." Plaintiff's physician opines:

"this condition is chronic and, unfortunately, will persist for MR. TOBIN. Inasmuch as the neck acts as the pivot for the head with continuous turning motions involved throughout the day and night, MR. TOBIN'S injury becomes a significant limitation of use of a body function or system."

Not surprisingly, defendant's physician reaches a different conclusion:

"It is my estimate that this patient will not have any permanent residuals as a result of the above accident and injury. At the present time he has no significant limitations as far as his activity level is concerned. He has finished his second year of schooling and is planning to go on to further schooling and he continues to work at his regular part-time job as a security guard."

Faced with this difference of opinion as to a factual issue central to the resolution of this case, the Court ordinarily would proceed without further comment to deny the motion for summary judgment as required by Rule 56(c), F.R.Civ.P., and mark the case ready for trial. Under the federal rules, genuinely disputed issues of material fact are reserved for the jury. However, state procedures governing motor vehicle negligence actions give us pause. According to the New York Court of Appeals, the threshold issue of whether a plaintiff sustained "serious injury" supporting a claim for pain and suffering is one for the court, not the jury. *Licari v. Elliot,* 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (Ct.App.1982). We believe that application of the *Licari* rule in a federal court sitting in diversity implicates the Seventh Amendment right to a trial by jury in civil cases.

In *Licari,* the plaintiff obtained a jury verdict in his favor on the basis that he had suffered a non-permanent injury which prevented him from performing substantially all his daily activities for at least 90 of the 180 days following the accident *and* on the basis that he sustained a significant limitation of use of a body function or system. The evidence at trial established a painful sprain limiting movement of the plaintiff's

back and neck and causing occasional headaches.

The New York Court of Appeals reversed the judgment and dismissed the complaint on the ground that, as a matter of law, the plaintiff had not sustained "serious injury" supporting a cause of action under the no-fault law. First, the court rejected the plaintiff's claim that he experienced "significant limitation of use of a body function," stating that consistent with the no-fault law's "obvious goal" of "keep[ing] minor personal injury cases out of court," the word "significant"

"... should be construed to mean something more than minor limitation of use. We believe that a minor, mild or slight limitation of use should be classified as insignificant within the meaning of the statute."

57 N.Y.2d at 237, 455 N.Y.S.2d 570, 441 N.E.2d 1088. The plaintiff's "mere temporary discomfort" including occasional pain, dizziness and headaches, were classified as insignificant.

Second, the court found that the 90/180 day category was inapplicable because the plaintiff was not prevented from performing "substantially all" of his daily activities, as defined as "curtail[ment] from performing his usual activities to a great extent rather than some light curtailment." 57 N.Y.2d at 237, 455 N.Y.S.2d 570, 441 N.E.2d 1088. That the plaintiff was unable to eat, dress or bathe himself during the three weeks following the accident, and thereafter suffered from headaches, did not meet this standard.

Of concern here, the *Licari* court rejected the plaintiff's argument that the question of whether a "serious injury" is present is always a question of fact for the jury. Instead, the court held that the trial court should decide in the first instance whether plaintiff has a cause of action to assert within the meaning of the statute.

"By enacting the No-Fault Law, the Legislature modified the common-law rights of persons injured in automobile accidents ... to the extent that plaintiffs in automobile accident cases no longer have an unfettered right to sue for injuries sustained. Thus, to the extent that the Legislature has abrogated a cause of action, the issue is one for the court, in the first instance where it is properly raised, to determine whether the plaintiff has established a *prima facie* case of sustaining serious injury. Since the purpose of the No-Fault Law is to assure prompt and full compensation for economic loss by curtailing costly and time-consuming court trials ... requiring that every case, regardless of the extent of the injuries, be decided by a jury would subvert the intent of the Legislature and destroy the effectiveness of the statute. The result of requiring a jury trial where the injury is clearly a minor one would perpetuate a system of unnecessary litigation. '[I]f the procedural system cannot find a way to keep cases that belong in no-fault out of the courthouse, the system is not going to work.'"

57 N.Y.2d at 238, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (citations omitted).

Although the *Licari* court suggested that only those plaintiffs not seriously injured "as a matter of law" would have their complaint dismissed at the pre-trial stage, the inquiry frequently entails a determination of disputed facts. To keep no-fault cases from crowding New York state court dockets, the court effectively removed from the jury's purview such qualitative judgments as whether an injury is permanent or temporary, imposes significant or minor limitations, restricts substantially all activities or involves only lesser curtailment. *See, e.g., Nolan v. Ford,* 100 A.D.2d 579, 473 N.Y.S.2d 516 (App.Div.2d Dep't), *aff'd* 64 N.Y.2d 681, 485 N.Y.S.2d 526, 474 N.E.2d 1194 (Ct.App.1984) (court determined that chronic intermittent back pains and psychological injuries are not "serious injury"); *Dwyer v. Tracey,* 105 A.D.2d 476, 480 N.Y.S.2d 781 (3d Dep't 1984) (court found plaintiff's complaints of continued intermittent head and neck pains curtailing certain activities insufficient to establish "serious injury"); *Lopez v. Senatore,* 97 A.D.2d 787, 468 N.Y.S.2d 527 (App. Div.2d Dep't 1983) (court found physician's allegations that plaintiff's injuries are per-

manent insufficient to establish "serious injury").

This Court does not question that New York is free to reallocate as between the judge and the jury the resolution of factual issues in civil actions brought in its own state courts. The Seventh Amendment, preserving the right of trial by jury in suits at common law, applies only to courts of the United States and not to courts of the individual states. *Minneapolis & St. Louis Railroad Co. v. Bombolis*, 241 U.S. 211, 213, 36 S.Ct. 595, 60 L.Ed. 961 (1916); *Walker v. Sauvinet*, 92 U.S. 90, 92 (2 Otto 90), 23 L.Ed. 678 (1875). However, "litigants in federal court cannot—by rules of [state] procedure—be deprived of fundamental rights guaranteed by the Constitution and laws of the United States." *Lyon v. Mutual Benefit Health & Accident Assn.*, 305 U.S. 484, 492, 59 S.Ct. 297, 300, 83 L.Ed. 303 (1939). Although in diversity cases, the substantive dimension of the claim asserted finds its source in state law, federal constitutional and statutory provisions preserving jury decisions of disputed fact questions in federal trials may not be abridged by state rules. *Simler v. Conner*, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963) (per curiam); *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 537–39, 78 S.Ct. 893, 900–02, 2 L.Ed.2d 953 (1958); *see* F.R.Civ.P. 38 and 39; 28 U.S.C. § 2072.

In ruling that the right to a jury trial is a matter of federal law in diversity actions, the Supreme Court has found no inconsistency with the *Erie* doctrine. It was decided in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that the federal courts in diversity cases must respect the definition of state-created rights and obligations by the state courts. Furthermore, while the federal courts ordinarily may follow their own rules of procedure, the *Erie* doctrine prohibits them from applying a federal procedural rule where the state rule is "bound up with [state-created] rights and obligations in such a way that its application in federal court is required." *Byrd*, 356 U.S. at 535, 78 S.Ct. at 899,

citing *Cities Service Oil Co. v. Dunlap*, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196 (1939).

The state rule concerned in *Byrd* required a judge rather than a jury to try the issue of whether the plaintiff in a negligence action was an employee of the defendant and thus limited in his remedy by state workers' compensation law. Observing that "[a] state may, of course, distribute the functions of its judicial machinery as it sees fit[,]" the Court found that the state rule merely reflected a policy of convenience favoring administrative determination of jurisdictional facts, and was not intended to be bound up with the definition of the rights and obligations of the parties. Thus, *Erie* presented no bar in *Byrd* to a jury determination in federal court of the issue of employment status. *See also Magenau v. Aetna Freight Lines, Inc.*, 360 U.S. 273, 278, 79 S.Ct. 1184, 1188, 3 L.Ed.2d 1224 (1959) (jury would determine issue of plaintiff's employment status in federal diversity action).

The *Byrd* Court also evaluated the state rule under a modified "outcome-determinative" test; that is, it balanced the likelihood that a jury determination of the issue would differ from a judge's against the federal policy favoring jury trials. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), as modified by *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Among the concerns weighed by the *Byrd* Court were the federal system's independence and integrity.

> "The federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction. An essential characteristic of that system is the manner in which, in civil common law actions, it distributes trial functions between judge and jury and, under the influence—if not the command—of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury."

356 U.S. at 537, 78 S.Ct. at 901 (footnote omitted); *see also Jacob v. New York*, 315

U.S. 752, 762–63, 62 S.Ct. 854, 855, 86 L.Ed. 1166 (1942).

The *Byrd* Court determined that the need to avoid disruption of the federal system outweighed the risk that the litigation might come out one way in the federal court and another way in the state court. Under the circumstances in *Byrd*, the federal policy favoring jury decisions displaced the state rule. *See also Simler*, 372 U.S. at 222, 83 S.Ct. at 610. ("Only through a holding that the jury-trial right is to be determined according to federal law can the uniformity in its exercise which is demanded by the Seventh Amendment be achieved"); *accord Herron v. Southern Pacific Co.*, 283 U.S. 91, 94, 51 S.Ct. 383, 384, 75 L.Ed. 857 (1931).

■ As in *Byrd*, plaintiff here can maintain his substantive state law claim only if he establishes certain jurisdictional facts, namely, the existence of a "serious injury" within the meaning of New York's no-fault law. It is undisputed that a claim for negligent operation or use of a motor vehicle is grounded in common law, and customarily in federal court all facts relating thereto would be passed upon by a jury. *Robostelli v. New York*, 33 F. 796 (2d Cir. 1888). However, New York state law requires the trial court to pass on the existence of "serious injury" in the first instance, removing the issue from the jury's purview. *Licari v. Elliot*, 57 N.Y.S.2d at 238, 455 N.Y.S.2d 570, 441 N.E.2d 1088. We find that the federal policy favoring jury determination of disputed facts, and the commands of the Seventh Amendment, displace the rule in *Licari* in diversity litigation, thus requiring denial of the instant motion for summary judgment.

By its own terms, the *Licari* rule represents a judicial gloss on a legislative policy of "curtailing costly and time-consuming court trials," 57 N.Y.2d at 238, and was not intended to be bound up with the definition of the rights and obligations of the parties. The rule was designed specifically with crowded New York state court dockets in mind. Failing to apply that rule here does not implicate *Erie*.

Furthermore, the risk that trying the issue of "serious injury" to a jury would alter the outcome of this action is outweighed by the need for uniform application of the Seventh Amendment jury trial right. *See Byrd*, 356 U.S. at 537, 78 S.Ct. at 901. The circumstances of this case do not justify subverting the preferred distribution of trial functions in the federal system.

Nor does this Court believe that enforcement of the federal jury trial right rather than the *Licari* rule will be outcome determinative in this case. The substance of the right of trial by jury as guaranteed by the Seventh Amendment is more than the convening and swearing of a panel of jurors followed by the entry of their judgment. Rather, it means trial by jury

"in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and ... to set aside their verdict if in his opinion it is against the law or the evidence."

*Capital Traction Co. v. Hof*, 174 U.S. 1, 13–14, 19 S.Ct. 580, 585, 43 L.Ed. 873 (1899). *See also Byrd*, 356 U.S. at 540, 78 S.Ct. at 902 (a federal trial judge has "powers, denied the judges of many States, to comment on the weight of the evidence and credibility of witnesses, and discretion to grant a new trial if the verdict appears to him to be against the weight of the evidence"). Proper instruction regarding the applicable state law will preserve the contours of New York's motor vehicle negligence claim as constituted by its legislature, and a jury verdict in plaintiff's favor, if motivated solely by the jurors' desire to be almoners, can be set aside by the trial judge.

We note that there are no reported decisions of the Second Circuit or Southern District of New York addressing the specific issue presented here, and counsel have directed our attention to none. Several unreported district court decisions were found and considered, although they are not controlling under the doctrine of *stare decisis*. The decision herein is consistent with the view developed in *Cole v. United States*, No. 85 Civ. 5295 (S.D.N.Y. May 16,

1986) [Available on WESTLAW, DCT database] (available on LEXIS, Genfed library, Dist file) (whether plaintiff sustained a serious injury was an issue for the trier of fact precluding summary judgment because defendant did not provide sufficient evidence to negate plaintiff's claim that intermittent pain in elbow and knee would become permanent and impair her ability to perform her job); and *Moren v. Greyhound Lines, Inc.*, No. 77 Civ. 3659 (S.D. N.Y. June 25, 1978) (available on LEXIS, Genfed library, Dist file) (whether plaintiff sustained serious injury an issue for the trier of fact).

We find readily distinguishable two decisions granting summary judgment for the defendant on the issue of "serious injury," which did not discuss the Seventh Amendment jury trial right. *Croyle v. Bonham*, No. 85 Civ. 5976 (S.D.N.Y. February 23, 1987) [Available on WESTLAW, DCT database] (available on LEXIS, Genfed library, Dist file) (holding that issue is for court, but making no reference to *Byrd* and its progeny and finding no serious injury on ground that plaintiff's claim was entirely subjective); *Leroy v. Bennett*, No. 83 Civ. 6747 (S.D.N.Y. April 12, 1985) [Available on WESTLAW, DCT database] (available on LEXIS, Genfed library, Dist file) (no reference to *Byrd* or functions of judge and jury).

Because the existence of "serious injury" in this case is, at least on the present record before the Court, a disputed issue of fact for the jury, the Court denies defendant's motion for summary judgment. This conclusion in no way reflects adversely on recent cases in the United States Supreme Court and the Second Circuit Court of Appeals favoring the granting of summary judgment, which development this Court welcomes.

Counsel is advised to be ready for trial on or after June 1, 1987, on 24 hours notice.

So Ordered.